[Civ. No. 10236. First Appellate District, Division One.—June 2, 1937.]

JULIAN ANN GRAY, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Raymond Perry and Abraham Setzer for Appellant.

A. B. Dunne, L. D. Dorety, Dunne & Dunne, Hadsell, Sweet, Ingalls & Lamb, Horace W. B. Smith, John J. O'Toole, City Attorney (San Francisco), and Henry Heidelberg, Deputy City Attorney, for Respondents.

THE COURT.—This is an appeal from a judgment in favor of the defendants in an action brought to recover damages for the alleged wrongful performance of an autopsy upon the body of one Wallace Lester Gray, and is brought by his widow. The defendants are the coroner of the city and county of San Francisco, the autopsy surgeon of the coroner, the coroner's assistant autopsy surgeon and pathologist, two physicians and surgeons employed by defendant Southern Pacific Company in the general hospital of that corporation, and one Bessie E. Scharpff, a nurse.

Gray, an employee of the Southern Pacific Company, died in said hospital on August 16, 1934, which he had entered as a patient on May 2d of that year, his death resulting from natural causes. The plaintiff on the day of her husband's death demanded of said Bessie E. Scharpff the body of the deceased. This demand was refused and the body was immediately given into the custody of the coroner and his assistants, who on the same day, in conjunction with the other doctors named, performed an autopsy thereon.

The defendants having answered to the complaint, and the cause coming on for trial, they moved for a judgment on the pleadings—the Southern Pacific Company on the ground that the complaint stated no cause of action in that it showed no facts which would exclude it from the effect of the provisions of section 8 of the Vital Statistics Act (Deering's General Laws, sec. 9008), and particularly that there was no showing on the face of the complaint that the cause of death was known, or that no accident was involved; Bessie E. Scharpff on the same grounds and, in addition, that the action as to her was barred by the statute of limitations; Sherman Leland, A. M. Moody and Earl N. Greenwood upon the same grounds with the exception of the statute of limitations; and Thomas B. W. Leland and Jesse L. Carr upon the ground that no showing was made in the complaint except by way of conclusions of law and conclusions of the pleader that it was not the duty of the coroner to perform the autopsy, and, in addition as to the defendant Carr, that he

was merely an employee of the coroner carrying out orders of his superior.

The motion of the respective defendants was granted by the court upon the ground that the complaint states no cause of action and, the plaintiff declining to amend, judgment was entered for the defendants.

The allegations of the complaint touching the autopsy are as follows: "That on the said 16th day of August, 1934, and after the death of said Wallace Lester Gray plaintiff did demand the custody and possession of the body of the late Wallace Lester Gray from the defendants Southern Pacific Company, a corporation, and Bessie E. Scharpff, and their employees, servants and agents, and said defendants did unlawfully, wilfully, maliciously and oppressively remove, conceal and retain the body . . . without any right or authority. That on the 16th day of August . . . the defendants unlawfully, wilfully, maliciously and oppressively and without the consent, knowledge or authority of plaintiff, did mutilate, desecrate, violate and outrage and did commit an act of irreverence and profanation upon the body of (deceased) in that, without permission of the plaintiff, the widow . . . who was then and there entitled to the custody of the body . . . for the purpose of burial, and without authority of law, did perform . . . a mutilation, desecration and violation upon said body . . . and did cut into and remove portions of the bony structure of said body, including the skull, spinal column"—(here follows an enumeration of various bodily organs)—"and did and have retained in their possession all of such portions of the internal organs and bony structure of the body . . . so removed, and did render impossible the embalming of said body and its view to relatives and to those to whom said deceased was endeared. That said mutilation, desecration, violation and outraging of the head and body of her deceased husband . . . was repugnant to the plaintiff, was offensive to and indecently insulted the said plaintiff, and by reason of said acts and each of them did cause the plaintiff a shock to her mental and physical equipoise, causing violent agitation of her feelings and disturbance of her mind, and wrecking her mental and physical equipoise, to her horror, mental anguish and extreme disgust, and disturbing permanently her peace of mind and causing her to be and become permanently sick in mind and body."

In support of the judgment the respondents contend that under the law of this state it is the duty of the coroner under certain circumstances to perform an autopsy upon the body of a deceased person; and that, in order to state a cause of action against him and those cooperating with him under his direction, the complaint must, in the absence of allegations of negligence or other wrong in the performance of the details of the task, set out facts and circumstances showing that the autopsy was not one which the law required or authorized him to perform. It is pointed out by them that the coroner is required to act where the cause of death is not known, or where an accident or injury is a contributing cause; and while the complaint, in attempting to negative the fact that an autopsy was proper in this case, sets forth that the deceased was not killed, that he did not commit suicide, and did not die suddenly under such circumstances as to afford a reasonable ground to suspect that his death was occasioned by criminal means,—these all being situations in which the coroner is required to act—it fails to negative the existence of other circumstances which equally make it his duty to intervene, such as, that the cause of death was known, or that the attending physician knew or was able to state the cause of death, or that no accident or injury was involved therein.

The policy of the laws of this state and their specific provisions require that the cause of every death shall be known. If it is not known at the time of its occurrence it must be determined thereafter. The Vital Statistics Act (Stats. 1915, p. 575, as amended; Deering's Gen. Laws, 1931 ed., Act 9008) makes it a criminal offense for any person to inter, cremate or otherwise finally dispose of the dead body of a human being without the authority of a burial or removal permit; and section 5 thereof prohibits the issuance of such permit unless, wherever practicable, a complete and satisfactory certificate of death has been filed, stating the cause of death. Section 7 of the act provides that the medical certificate must be made and signed by the physician, if any, in last attendance on the deceased except in those cases in which he is unable to state the cause of death, or where a person has been killed, or has committed suicide, or his death is the result of an accident, and other enumerated cases. In section 8 it is made the duty of the coroner to furnish the certificate in certain cases, including that in which the attending

physician is unable to state the cause of death. In this certificate the coroner must state the name of the disease causing death, or, if from external causes, the means of death, and whether (probably) accidental, suicidal or homicidal. The question immediately arises, if the attending physician is unable to state the cause of death, how is the coroner, whose connection with the case commences after death has ensued, to be placed in a position to do so? Obviously, it must be by an examination of the body. It is equally obvious that such an examination, in order to comply with the requirements of the last-mentioned section of the act, must be thorough, and may in many cases entail the opening of the body and an examination of its organs or such of them as result in. furnishing the desired information. A proper examination ''to establish the cause of death should show not only a cause, but should exclude all other supposable or possible causes''. (*Kingsley* v. *Forsyth,* 192 Minn. 468 [257 N. W. 95].)

There can be no liability for an act required by law (*Huntly* v. *Zurich Gen. Acc. & Liab. Ins. Co.*, 100 Cal. App. 201 [280 Pac. 163]); and in suits brought against officers, where it is sought to make them personally liable, the declaration or complaint should set forth the special circumstances which are relied on to establish the liability. (46 Cor. Jur., Officers, sec. 340, p. 1048.) So, in charging a coroner and his lawful assistants with illegality in performing an autopsy the complaint should set forth the circumstances which make it illegal; and this we think can only be done by showing through proper allegations that it was not one of those that the coronor was authorized to perform. This to some extent the complaint undertook to do but fell short in its enumeration of them. Shorn of its adjectives ''unlawfully'', ''maliciously'' and ''oppressively'', and having in mind that the most proper and necessary cutting into a corpse may be described as a mutilation of it, the acts charged against the coroner and his assistants are not shown to have been illegal or wrong. It is not enough to charge that the act complained of was unlawful or was maliciously or oppressively done. As was said in the case of *Wilson* v. *Spencer,* 91 Neb. 169 [135 N. W. 546], citing Cooley, Torts, 3d ed., 832: ''The mere allegation in the petition that in performing work which was clearly within the scope of his duties the officer acted maliciously, wantonly and unlawfully, does not state

an actionable wrong. Bad motive by itself is no tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. . . . When in legal pleading the defendant is charged with having wrongfully and unlawfully done the act complained of, the words are only words of vituperation, and amount to nothing unless a cause of action is otherwise alleged.

■ If, as we think we have shown, the complaint does not show the autopsy to have been unlawful, the mental and physical shock and distress caused thereby to the plaintiff— which is the gravamen of the action (*Huntly* v. *Zurich Gen. Acc. & Liab. Ins. Co., supra*)—gave rise to no cause of action.

■ In support of the appeal it is further urged that, assuming that the complaint does not show the autopsy to have been unlawful, certain allegations contained therein to the effect that various organs of the body were removed during the autopsy and have been retained by the defendants are sufficient to state a cause of action, and that on this ground the motions for judgment on the pleadings were improperly granted.

This point was not suggested on the hearing in the trial court, the plaintiff's effort to sustain the complaint being there based upon the alleged unlawfulness of the autopsy. The point, however, is nevertheless available here, but we think it without merit.

It is not claimed that the plaintiff has any property right in the body or any of its parts: the right claimed to have been violated is the right to possession by the wife of her deceased husband's body for the purpose of decent burial free of mutilation by an autopsy thereon. The allegation of the complaint in this regard is to the effect that the mutilation of her husband's body produced on the plaintiff a mental and physical shock, disturbed permanently her peace of mind and caused her to become sick in mind and body. The distress suffered by the plaintiff is in no way attributed to the retention of the removed organs, nor does it appear that at the time of the occurrence of the shock and distress described she was aware of such retention. The action is not one for conversion, nor could it be, as the law recognizes no right of property as such in the dead body of a human being. The right is to the possession of the body, and is one recognized for the purpose of determining who shall have its custody for the purpose of burial. (*Huntly* v. *Zurich*

*Gen. Acc. & Liab. Ins. Co., supra; Painter* v. *United States F. & G. Co.,* 123 Md. 301 [91 Atl. 158]; *Foley* v. *Phelps,* 1 App. Div. 551 [37 N. Y. Supp. 471].) Aside from the question of pleading, and assuming a violation of plaintiff's right to the return of the removed organs, such violation could give rise to no more than nominal damages. Their return to the plaintiff (if such were possible) after having served their purpose in aiding in the determination of the cause of death, could have caused her only embarrassment, and, perhaps, horror; and this court would not be justified in reversing the judgment for the purpose of procuring such an award. Failure to return a verdict for nominal damages is not in general ground for reversing a judgment or granting a new trial. (5 Cor. Jur. Sec., Appeal and Error, sec. 1914, p. 1415; *Walker* v. *Southern Pac. Co.,* 162 Cal. 121 [121 Pac. 369]; *Martin* v. *Pritchard,* 52 Cal. App. 720 [199 Pac. 846]; *Holmes* v. *Snow Mountain etc. Co.,* 36 Cal. App. 394 [172 Pac. 178]; *Liljefelt* v. *Blum,* 33 Cal. App. 721 [166 Pac. 384].)

For the foregoing reasons the judgment is affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 29, 1937.