[No. C043762. Third Dist. Dec. 11, 2003.]

BOBBIE LEE SPATES, Plaintiff and Appellant, v.
DAMERON HOSPITAL ASSOCIATION, Defendant and Respondent.

COUNSEL

Stephen H. Cornet and Brenda C. Morrissey for Plaintiff and Appellant.

Kroloff, Belcher, Smart, Perry & Christopherson, Orlie L. Curtis and J. Douglas Van Sant for Defendant and Respondent.

OPINION

HULL, J.—Plaintiff appeals from a judgment of dismissal following an order granting defendant's motion for summary judgment. Plaintiff contends issues of fact remain on her claims stemming from defendant's failure to take reasonable steps to notify her of her mother's death. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

On review of an order granting summary judgment, we consider the evidence in the light most favorable to the opposing party. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

Martha Morris (decedent) was a patient at Dameron Hospital in Stockton when at approximately 3:00 a.m., August 5, 2000, she died of congestive heart failure and diabetes mellitus. Since November 1998, decedent had been a resident of a nursing home facility operated by Beverly Health and Rehabilitation Services, Inc. (Beverly Manor), and had been taken to Dameron Hospital for treatment on more than one occasion during this period.

In November 1998, plaintiff Bobbie Lee Spates, who is decedent's daughter, provided Beverly Manor with information regarding decedent's burial insurance and instructions to have decedent's remains sent to Thompson Funeral Home.

In June 1999, plaintiff moved from the Stockton area to Richmond, California, where she resided with a friend. Plaintiff informed Beverly Manor of her new address in Richmond shortly after she moved.

Decedent was admitted to Dameron Hospital for treatment on November 11, 1999. Plaintiff went to the hospital on November 16 to visit her mother and, at the time, gave a nurse her new address and telephone number. This information was placed on a note on decedent's chart. This was plaintiff's last visit to decedent. There is no evidence that plaintiff had any further contact with Dameron Hospital between November 1999 and her mother's death in August 2000.

Following pronouncement of decedent's death, Gayla Hartman, a nurse at Dameron Hospital, looked on decedent's chart for emergency contact information and found plaintiff's name. She called the number on the chart. However, the address and telephone number listed were from plaintiff's prior Stockton residence. Hartman then called Beverly Manor to obtain the correct telephone number for plaintiff. She was given the number 948-6572. However, when Hartman called that number, she discovered it had been disconnected. Hartman did not look at any charts from decedent's prior visits to the hospital.

Decedent's remains were eventually turned over to the county coroner and were cremated. Plaintiff's daughter sought to contact decedent on August 17, 2000, and learned of the death and cremation. Plaintiff then initiated this action against Dameron Hospital Association (Dameron), the operator of Dameron Hospital, and Beverly Manor, alleging negligent disposal of decedent's body, conversion and breach of fiduciary duty.

Dameron moved for summary judgment, arguing, among other things that it owed no duty to plaintiff with respect to the disposal of decedent's body. The trial court granted the motion. The court concluded that the complaint sought emotional distress damages and such relief is available only if there was a preexisting relationship between the parties. The court concluded that no such relationship existed between Dameron and plaintiff. The court further concluded that even if a duty existed, it required only a reasonable effort to locate next of kin, and Dameron made a reasonable effort as a matter of law. The court thereafter entered judgment of dismissal. Plaintiff's motion for a new trial was denied, and this appeal followed.

## DISCUSSION

### I

#### *Negligent Infliction of Emotional Distress*

Plaintiff seeks to recover for emotional distress caused by the negligent disposal of decedent's remains. The complaint alleges that Dameron negligently interfered with plaintiff's right to dispose of decedent's body by failing

to notify plaintiff of decedent's death, failing to carry out plaintiff's wishes with respect to funeral and burial services, failing to keep accurate records of plaintiff's current whereabouts and failing to use reasonable efforts to find plaintiff.

"The law of negligent infliction of emotional distress in California is typically analyzed . . . by reference to two 'theories' of recovery: the 'bystander' theory and the 'direct victim' theory . . . . [¶] . . . [¶] . . . '[T]he *negligent* causing of emotional distress is not an independent tort, but the tort of *negligence* . . . . The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law.' " (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1071–1072 [9 Cal.Rptr.2d 615, 831 P.2d 1197].)

█ The bystander theory recognizes a duty in the limited class of cases where a plaintiff "(1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 647 [257 Cal.Rptr. 865, 771 P.2d 814].) Direct victim theory involves a duty owed directly to the plaintiff "that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 590 [257 Cal.Rptr. 98, 770 P.2d 278].)

This matter involves a direct victim claim. Plaintiff does not allege that she suffered emotional distress by witnessing negligent medical treatment of decedent. In granting Dameron's motion for summary judgment, the trial court indicated that "one cannot be a 'direct victim' so as to recover emotional distress damages unless there is a preexisting relationship between the parties." The court concluded that no such relationship existed in this instance.

Plaintiff contends the relevant factors support imposition of a duty under the facts of this case. She argues that Dameron had a statutory duty to locate and notify her of decedent's death and that once Dameron undertook to locate decedent's next of kin, it assumed a duty to her.

Taking its cue from the trial court, Dameron contends there can be no duty to protect plaintiff against negligent infliction of emotional distress absent a preexisting relationship between Dameron and plaintiff. Dameron cites as support *Krupnick v. Hartford Accident & Indemnity Co.* (1994) 28 Cal.App.4th 185 [34 Cal.Rptr.2d 39], in which an injured party sued the

tortfeasor's insurer for unfair settlement practices. In rejecting the claim, the Court of Appeal stated that in *Burgess v. Superior Court, supra,* 2 Cal.4th 1064, the Supreme Court provided a "simple, working definition of 'direct victim' " that required "the presence of a preexisting relationship between the parties . . . ." (*Krupnick v. Hartford Accident & Indemnity Co., supra,* 28 Cal.App.4th at p. 190.) There was no such preexisting relationship between the injured party and the tortfeasor's insurer.

Dameron's reliance on *Krupnick* is misplaced. In neither *Krupnick* nor *Burgess* did the court say that a preexisting relationship is a sine qua non of a direct victim claim. In *Burgess,* the court stated: "[A] cause of action to recover damages for negligently inflicted emotional distress will lie, notwithstanding the criteria imposed upon recovery by bystanders, in cases where a duty arising from a preexisting relationship is negligently breached." (*Burgess v. Superior Court, supra,* 2 Cal.4th at p. 1074.) However, the court did not say that this is the *only* way such a claim may be established. On the contrary, the court cited *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra,* 48 Cal.3d at page 590, where it had earlier stated that a direct victim claim may be premised on a duty that is (1) assumed by the defendant, (2) imposed as a matter of law, or (3) arises out of a relationship between the parties.

Dameron also cites *Bro v. Glaser* (1994) 22 Cal.App.4th 1398 [27 Cal.Rptr.2d 894], where the Court of Appeal announced a bright-line rule for direct victim claims, requiring two elements: (1) a preexisting relationship between the parties, and (2) outrageous conduct. (*Id.* at pp. 1416, 1440–1441.) However, *Bro v. Glaser* has been uniformly criticized as straying from the guidelines established by the Supreme Court. (See *Wooden v. Raveling* (1998) 61 Cal.App.4th 1035, 1042 [71 Cal.Rptr.2d 891]; *Fluharty v. Fluharty* (1997) 59 Cal.App.4th 484, 492 [69 Cal.Rptr.2d 244]; *Mercado v. Leong* (1996) 43 Cal.App.4th 317, 327 [50 Cal.Rptr.2d 569].)

Dameron also relies on *Aguirre-Alvarez v. Regents of University of California* (1998) 67 Cal.App.4th 1058 [79 Cal.Rptr.2d 580], in which an individual who stole a car and was shot by police was taken to the defendant's hospital for treatment. (*Id.* at p. 1060.) After the individual died, his body was turned over to the coroner, who disposed of it by cremation. (*Id.* at pp. 1061–1062.) The decedent's family brought an action against the defendant for negligent infliction of emotional distress, and the trial court granted the defendant's motion for summary judgment. (*Id.* at p. 1062.)

The Court of Appeal affirmed. On the question whether a special relationship existed between the hospital and the deceased, the court distinguished its case from *Christensen v. Superior Court* (1991) 54 Cal.3d 868 [2 Cal.Rptr.2d

79, 820 P.2d 181]. In *Christensen,* the Supreme Court found that a mortuary defendant had assumed a duty to the close relatives of a decedent for whose benefit the defendant was to provide funeral and related services. In *Aguirre-Alvarez,* the court concluded that the hospital did not assume a duty to the relatives of the deceased. The court explained: "The circumstances of the instant matter contrast sharply with the situation presented in *Christensen.* UCLA had no contractual relationship with any of decedent's relatives. It had undertook [*sic*] no obligation whatsoever to provide any interment services or any other benefits to the family; it provided only health care services to the mortally wounded decedent. No statute obligated UCLA to notify decedent's family. Moreover, the statutes required UCLA to present the remains to the coroner, as it did. UCLA had no special relationship with any of decedent's family members. Instead, its relationship was with decedent and the police within whose constructive custody decedent remained until his demise. UCLA thus owed no duty to appellants and, in not notifying the family of decedent's demise, did not interfere with appellants' right to have decedent properly interred." (*Aguirre-Alvarez v. Regents of University of California, supra,* 67 Cal.App.4th at pp. 1066–1067.)

Dameron argues, "[t]here would appear to be a strong analogy with the present situation, in which there was no contact between the family and the hospital, and the patient, who was a long-term resident at Beverly Manor, was admitted to the hospital at the request of Beverly Manor."

█ We agree with Dameron that the present matter is somewhat analogous to *Aguirre-Alvarez.* However, that does not settle the matter for Dameron. The *Aguirre-Alvarez* court concluded that no preexisting relationship existed between the deceased's relatives and the hospital. Likewise, there was no relationship existing between plaintiff and Dameron at the time of plaintiff's mother's admission to the hospital in August 2000. Plaintiff's presentation of contact information at the time of a prior admission some nine months earlier was insufficient to establish a relationship that continued indefinitely thereafter, even if one were to assume that the hospital's acceptance of that information was for the benefit of plaintiff in the first place. However, *Aguirre-Alvarez* did not say that a direct victim claim requires a preexisting relationship. On the contrary, as discussed later, *Aguirre-Alvarez* suggested that a direct victim claim may be premised on a duty imposed by statute.

Finally, Dameron cites *Ess v. Eskaton Properties, Inc.* (2000) 97 Cal.App.4th 120 [118 Cal.Rptr.2d 240]. In *Ess,* this court concluded that a nursing home owed no duty to the sister of a patient who had developed a serious pressure ulcer on her body and had been sexually assaulted by an unknown intruder. (*Id.* at p. 125.) We concluded that the matter was controlled by *Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124

[24 Cal.Rptr.2d 587, 862 P.2d 148]. (*Ess v. Eskaton Properties, Inc., supra,* at p. 128.) In *Huggins,* the high court rejected an emotional distress claim by parents who administered five times the proper dose of a medication to their minor child due to the defendant pharmacy's negligence. Despite the parents' contractual relationship with the pharmacy, their participation in administering the medication, and their close familial relationship with the patient, the court found no duty owed to the parents. (*Huggins v. Longs Drug Stores California, Inc., supra,* at pp. 128, 132–133.)

In *Ess,* the court explained: "In this case, plaintiff has alleged that she had a close familial relationship with her sister and had undertaken to care for her since the sister's diagnosis with Alzheimer's disease. However, when the sister became a resident of Eskaton Manzanita Manor, defendants undertook to provide care to the sister and not to plaintiff. Like the parents in *Huggins,* plaintiff would incidentally benefit from defendants' provision of care to her dependent relative, but, as in *Huggins,* that is not sufficient to support a direct victim cause of action for emotional distress." (*Ess v. Eskaton Properties, Inc., supra,* 97 Cal.App.4th at pp. 128–129.)

The present matter is distinguishable from both *Ess* and *Huggins.* In those cases, the plaintiffs were seeking to recover for emotional distress caused by the defendant's actions toward a close relative of the plaintiffs. Here, plaintiff does not claim emotional distress arising from Dameron's treatment of decedent. Plaintiff claims emotional distress stemming from Dameron's treatment of decedent's dead body. The conduct alleged to have caused injury occurred after decedent ceased to exist. In *Ess* and *Huggins,* there was a duty owed to the injured patient, but not the patient's relatives. Consistent with those cases, prior to decedent's death, Dameron owed a duty of care to decedent but not to plaintiff. However, the question here is whether a duty to plaintiff arose after decedent's death.

Plaintiff contends such a duty was imposed by statute. She argues that this case is governed by Health and Safety Code sections 7100, 7100.1, 7104, subdivision (a), and 7200. (Further undesignated section references are to the Health and Safety Code.) Section 7100 sets forth the order of priority for those with control over the disposition of a decedent's remains. At the time of decedent's death, it read, in relevant part: "(a) The right to control the disposition of the remains of a deceased person, the location and conditions of interment, and arrangements for funeral goods and services to be provided, unless other directions have been given by the decedent pursuant to Section 7100.1, vests in, and the duty of disposition and the liability for the reasonable cost of disposition of the remains devolves upon, the following in the order named: [¶] (1) An agent under a power of attorney for health care . . . [¶] . . . [¶] (2) The competent surviving spouse. [¶] (3) The sole surviving

competent adult child of the decedent . . . ." (Stats. 1999, ch. 658, § 5.5.) Section 7100.1 gives the decedent power, prior to death, to direct the disposition of his or her remains.

Section 7104, subdivision (a) reads: "When no provision is made by the decedent, or where the estate is insufficient to provide for interment and the duty of interment does not devolve upon any other person residing in the state or if such person can not after reasonable diligence be found within the state the person who has custody of the remains may require the coroner of the county where the decedent resided at time of death to take possession of the remains and the coroner shall inter the remains in the manner provided for the interment of indigent dead."

Finally, section 7200 reads, in relevant part: "Every head of a public institution, city or county undertaker, or state, county, or city officer having charge or control of remains to be interred at public expense shall use due diligence to notify the relatives of the decedent. . . ."

Plaintiff contends section 7104, subdivision (a) "would seem to apply" in this instance because defendant was a " 'person who has custody of the remains' " who could require the coroner to inter decedent's remains, but only after making reasonable efforts to locate the relatives or other responsible persons. Plaintiff relies primarily on dictum in *Aguirre-Alvarez v. Regents of University of California, supra*, 67 Cal.App.4th 1058. There, the court rejected the plaintiffs' claim that section 7104 required the defendant to notify family members. According to the court, that duty rested on the coroner, who was the public institution having charge and control of the remains. The decedent remained in the constructive control of the police during his treatment at the hospital and was then turned over to the coroner. (*Aguirre-Alvarez v. Regents of University of California, supra*, 67 Cal.App.4th at pp. 1064–1066.) However, in dictum, the court suggested that the result might have been different if the decedent had not been in police custody. The court stated: "Public policy does not require judicial imposition of a duty to notify appellants about decedent's death. The Legislature has enacted a legislative scheme that allocates the duty under various circumstances. Thus, if the decedent were merely a hospital patient whose death did not invoke Government Code section 27491, then Health and Safety Code section 7104, subdivision (a), would seem to apply. In that instance, a hospital as a 'person who has custody of the remains' could 'require the coroner' to inter the remains but only if the relatives or other responsible person 'can not after reasonable diligence be found within the state . . . .' (Health & Saf. Code, § 7104 , subd. (a).) That condition precedent would require the hospital to make some inquiry about the decedent's family. . . ." (*Aguire-Alvarez v. Regents of University of California, supra*, 67 Cal.App.4th at p. 1067.)

Dameron contends the foregoing dicta is inapplicable here because, like the deceased in *Aguirre-Alvarez* who was in the constructive custody of the police while at the hospital, decedent was in the constructive custody of Beverly Manor during her stay at Dameron Hospital. Thus, so the argument goes, Dameron's obligations ended on decedent's death, and any duty to notify next of kin fell upon Beverly Manor and/or the coroner.

We do not agree with Dameron that decedent was in the constructive custody of Beverly Manor while a patient at Dameron Hospital. In *Aguirre-Alvarez*, the decedent was a criminal suspect taken into custody for prosecution. He was accompanied to the hospital by police and, following death, the police turned his body over to the coroner. By contrast, Beverly Manor relinquished control of decedent to Dameron. Dameron retained control over decedent until she died and her body was turned over to the coroner by Dameron.

Nevertheless, we agree with Dameron that no duty arose in favor of plaintiff by virtue of section 7104. Plaintiff contends that violation of that section, and the others cited above, created a presumption of negligence. Where a statutory standard establishes the defendant's duty, "proof of the defendant's violation of a statutory standard of conduct raises a presumption of negligence that may be rebutted only by evidence establishing a justification or excuse for the statutory violation." (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 547 [25 Cal.Rptr.2d 97, 863 P.2d 167].) This rule, generally known as the doctrine of negligence per se, means that where the court has adopted the conduct prescribed by statute as the standard of care for a reasonable person, a violation of the statute is presumed to be negligence. (*Casey v. Russell* (1982) 138 Cal.App.3d 379, 383 [188 Cal.Rptr. 18].)

The negligence per se doctrine, as codified in Evidence Code section 669, creates a presumption of negligence if four elements are established: "(1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (*Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1420 [107 Cal.Rptr.2d 50].) The first two elements are questions of fact, while the latter two are questions of law. (*Ibid.*)

■ Notwithstanding the dictum in *Aguirre-Alvarez*, section 7104 does not impose on a person having custody of remains a duty that is enforceable by persons having the right of interment of those remains. "[E]very statute

should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.] Legislative intent will be determined so far as possible from the language of the statutes, read as a whole." (*County of Fresno v. Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426 [251 Cal.Rptr. 170].)

Section 7104 is part of division 7, part 1, chapter 3 of the Health and Safety Code (§ 7100 et seq.), which addresses custody and duty of interment. Section 7100, subdivision (a) establishes the priority of those having a right and duty over a decedent's remains. Section 7100, subdivision (d) imposes liability for the cost of disposition "jointly and severally upon all kin of the decedent in the same degree of kindred and upon the estate of the decedent." Section 7101 provides that when the decedent leaves an estate, the cost of disposition shall be a priority expense of the estate. Section 7103 makes it a misdemeanor for one charged with the duty of interment to fail to perform that duty. Section 7104 imposes the duty of interment on the coroner when "no provision is made by the decedent," "the estate is insufficient to provide for interment" and "the duty of interment does not devolve upon any other person residing in the state" or "such person can not after reasonable diligence be found within the state." Section 7104.1 authorizes the coroner to seek reimbursement from a responsible party who "fails, refuses, or neglects to inter the remains." Section 7105 authorizes a petition to compel a responsible party "to make interment of the remains."

It is clear from the language of section 7104 and the other statutes of which it is a part that section 7104 was designed to create a condition of last resort with respect to the expense of interment. Only where no other source is available and no responsible party can be found "after reasonable diligence" (§ 7104, subd. (a)) may a party in possession of a decedent's remains transfer the duty to dispose of the remains to the public in the person of the coroner. Hence, the condition requiring reasonable diligence to locate responsible parties before turning over a decedent's remains to the coroner was not designed to protect such responsible parties but to protect the county treasury. Only where no other source of payment can be found can the expense be imposed on the county.

This conclusion is consistent with section 7200, also cited by plaintiff. That section requires "[e]very head of a public institution, city or county undertaker, or state, county, or city officer having charge or control of remains to be interred at public expense" to "use due diligence to notify the relatives of the decedent." (§ 7200.) Upon release of remains to the coroner, the coroner has a duty under this section to use due diligence to locate relatives of the decedent.

Plaintiff was not within the class of persons for whose protection section 7104 was enacted. That section does not impose a duty on Dameron that plaintiff can enforce. Plaintiff cites no other statutory basis for a duty of care.

Plaintiff nevertheless argues that Dameron assumed such a duty. Plaintiff cites as support *Christensen v. Superior Court, supra,* 54 Cal.3d 868, *Saari v. Jongordon Corp.* (1992) 5 Cal.App.4th 797 [7 Cal.Rptr.2d 82], and *Sinai Temple v. Kaplan* (1976) 54 Cal.App.3d 1103 [127 Cal.Rptr. 80]. However, each of these cases involved a claim against a provider of services relating to the disposition of human remains. Each case recognized a duty owed to relatives that was assumed by the defendant when it contracted to provide such services. Here, Dameron did not contract with plaintiff or anyone else for the disposition of decedent's remains. Therefore, Dameron assumed no duty in this regard.

Plaintiff contends that "once the hospital had made the effort to locate the next of kin of the decedent, when the nurse made the telephone call to the wrong number, and then to the nursing home which provided a disconnected number, the hospital assumed a duty to notify [plaintiff] or a relative of [decedent's] death." However, plaintiff cites no authority for this assertion. Where a point is raised in an appellate brief without argument or legal support, "it is deemed to be without foundation and requires no discussion by the reviewing court." (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].) In any event, we find the argument that a duty enforceable by plaintiff arose merely by the hospital's effort to contact next of kin unpersuasive. Finally, if plaintiff is asserting some form of estoppel theory, this was not alleged in the complaint or asserted below. A defendant's summary judgment motion need only negate matters alleged in the complaint. (*Tobin v. Stevens* (1988) 204 Cal.App.3d 945, 953 [251 Cal.Rptr. 587].)

Having found that the trial court properly concluded that Dameron did not owe plaintiff a duty of care under the circumstances of this case, we need not consider the trial court's alternate conclusion that Dameron's actions were reasonable as a matter of law.

II

*Conversion*

Plaintiff contends the trial court erred in granting summary judgment because issues of fact remain on her claim for conversion. Plaintiff's fourth cause of action alleged that she had a legal right to control the disposition of decedent's remains and Dameron interfered with that right.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543–544 [50 Cal.Rptr.2d 810].)

Dameron argues that plaintiff has cited no authority for recognizing a claim of conversion based on the disposition of human remains. Dameron further argues that plaintiff's conversion claim is redundant to her negligence claim, as it seeks the same emotional distress damages.

█ Dameron's arguments are unavailing. Although the normal measure of damages for conversion is "[t]he value of the property at the time of the conversion" and "[a] fair compensation for the time and money properly expended in pursuit of the property" (Civ. Code, § 3336), emotional distress damages have also been allowed (see *Gonzales v. Personal Storage, Inc.* (1997) 56 Cal.App.4th 464, 476–477 [65 Cal.Rptr.2d 473]). A separate claim is not redundant simply because it seeks the same damages. If plaintiff has stated a proper claim for conversion, it may go forward regardless of the fate of her negligence claim.

In its motion below, Dameron asserted that "[t]here cannot be a claim of conversion because there is no right of property in the body of a dead person." Defendant cited as support *Cohen v. Groman Mortuary, Inc.* (1964) 231 Cal.App.2d 1 [41 Cal.Rptr. 481], disapproved on other grounds in *Christensen v. Superior Court, supra,* 54 Cal.3d at page 889, and *Gray v. Southern Pacific Co.* (1937) 21 Cal.App.2d 240 [68 P.2d 1011]. In *Cohen,* the court stated that "[t]here is no right of property as such in the body of a dead person." (*Cohen v. Groman Mortuary, Inc., supra,* 231 Cal.App.2d at p. 4.) In *Gray,* the court went further and suggested there can be no action for conversion of a dead body because "the law recognizes no right of property as such in the dead body of a human being." (*Gray v. Southern Pacific Co., supra,* 21 Cal.App.2d at p. 246.)

█ However, in both *Cohen* and *Gray,* as well as other similar decisions, the courts have recognized that next of kin have a temporary, *quasi-property* right in the body of a deceased for purposes of burial or other disposition. (See *Enos v. Snyder* (1900) 131 Cal. 68, 69–70 [63 P. 170]; *Sinai Temple v. Kaplan, supra,* 54 Cal.App.3d at p. 1110 and fn. 13; *Cohen v. Groman Mortuary, Inc., supra,* 231 Cal.App.2d at pp. 4–5; *Gray v. Southern Pacific*

*Co., supra,* 21 Cal.App.2d at pp. 246–247.) An action for conversion requires neither legal title nor absolute ownership of the property. (*Messerall v. Fulwider* (1988) 199 Cal.App.3d 1324, 1329 [245 Cal.Rptr. 548].) A party need only allege that " ' "she was *entitled to immediate possession at the time of conversion."* ' " (*Ibid.*) As the court in *Cohen* stated: "The duty to bury a corpse and to preserve its remains is a legal right which courts of law will recognize and protect; such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin." (*Cohen v. Groman Mortuary, Inc., supra,* 231 Cal.App.2d at pp. 4–5.) These exclusive rights of possession, control and disposition have been codified in section 7100. (*Newman v. Sathyavaglswaran* (9th Cir. 2002) 287 F.3d 786, 793.)

At any rate, plaintiff's conversion claim fails for a different reason. As a matter of law, there was no *wrongful* act or disposition of decedent's body. The foundation for a conversion claim " 'rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. . . .' " (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1065 [80 Cal.Rptr.2d 704].) Not every failure to deliver property to the rightful owner constitutes a conversion. (*Hartford Financial Corp. v. Burns* (1979) 96 Cal.App.3d 591, 602 [158 Cal.Rptr. 169].) "To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of the property." (*Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 550 [176 P.2d 1].) "The act of removing personal property from one place to another, without an assertion of ownership or preventing the owner from exercising all rights of ownership in such personal property, is not enough to constitute conversion." (*Itano v. Colonial Yacht Anchorage* (1968) 267 Cal.App.2d 84, 89 [72 Cal.Rptr. 823].) Thus, in *Simonian v. Patterson* (1994) 27 Cal.App.4th 773, 781–782 [32 Cal.Rptr.2d 722], the defendant's act of moving items, which apparently belonged to his daughter, to a new apartment was not a conversion of the plaintiff's property, because there was no exercise of dominion over those items and no intent to prevent the rightful owner from taking possession.

■ Dameron did not exercise dominion or control over decedent's body. After decedent's death, Dameron took steps to turn the body over to the next of kin. Having failed in this attempt, Dameron turned the body over to the coroner, the proper governmental authority. Dameron did nothing to deprive plaintiff of any property interest she had in decedent's body. Plaintiff's claim is not based on Dameron's action in turning the body over to the coroner but in Dameron's failure to take further steps to provide notification of the death. However, conversion requires affirmative action to deprive another of property, not a lack of action. Because there was no wrongful act of dominion or control over decedent's body, there is no conversion claim. Summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Morrison, J., concurred.