Filed 12/31/25  Homeport Insurance v. McRae CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HOMEPORT INSURANCE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>VERONICA MCRAE et al.,<br><br>        Defendants and Respondents. | A172243<br><br>(Alameda County Super. Ct. No. 23CV041224) |

Plaintiff Homeport Insurance (plaintiff) paid Veronica McRae $425,000 for settling a claim she filed as an alleged widow for benefits with the United States Department of Labor (DOL) under the Longshore & Harbor Workers' Compensation Act (33 U.S.C., § 901 et seq.; LHWCA).  Plaintiff also paid $30,000 to attorney defendants Philip Weltin, Daniel Weltin, and Weltin, Streb & Weltin, LLP (defendants) for attorney fees and costs for representing McRae.  These payments were made pursuant to an administrative law judge's order approving the settlement and attorney fees and costs under federal law.

Plaintiff brought the current action against defendants for conversion, a constructive trust, unjust enrichment, and injunctive and declaratory relief after learning that McRae allegedly falsely represented that she was the decedent's widow.

1

Defendants filed a special motion to strike plaintiff's complaint under the anti-SLAPP statute (Code Civ. Proc.[1], § 425.16), and the trial court struck the complaint after finding the complaint arose from protected activity and plaintiff failed to show a probability of prevailing on the merits. For the reasons set forth herein, we affirm the court's order.

## BACKGROUND

As alleged in plaintiff's verified complaint, this case originated from a separate administrative claim for death benefits under the LHWCA that McRae filed after her alleged husband passed away following an injury he suffered during his employment at the Port of Oakland.

The LHWCA provides for benefits to be paid by an employer for injury or death arising out of and in the course of maritime employment. (33 U.S.C. §§ 902(2)–(3), 909.) When a LHWCA claim is filed with the DOL, a deputy commissioner has the power to investigate and resolve the claim and is required to hold a hearing on the claim before an administrative law judge (ALJ) if requested by an interested party. (*Id.* at § 919.) Settlement of a LHWCA claim requires the approval of an ALJ or deputy commissioner (*id.* at § 908(i)(1)), and an order approving settlement is a compensation order that must be paid within 10 days to avoid a monetary penalty. (*Id.* at §§ 914(f), 919(e).) Additionally, where an employer or insurance carrier claims lack of liability and a claimant successfully prosecutes his or her

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

claim, the employer or insurance carrier must directly pay the claimant's attorney his or her fees and any agreed-upon attorney fees in a settlement that must be approved by an ALJ. (*Id.* at § 928(a); 20 C.F.R. § 702.132(c).)

The parties participated in mediation and reached a settlement resolving McRae's claim and attorney fees and costs. The parties filed a stipulated application to approve the settlement under 33 U.S.C. section 908(i), and an ALJ issued an order approving the settlement and attorney fees and costs. The order states, in relevant part, "Based upon the agreement, Employer/Carrier is ordered to pay . . . McRae the amount of $425,000.00 for settlement of all claims for disability compensation and medical benefits, including future medical benefits and death benefits, related to the injuries. Employer/Carrier shall also pay the amount of $15,000.00 [each to Daniel Weltin, and Weltin, Streb & Weltin, LLP] for attorney's fees and costs arising out of this claim. The total amount of fees and costs is $30,000.00. The total amount of the settlement, including attorney's fees and costs, is $455,000.00." Plaintiff paid defendants and McRae pursuant to this order.

Approximately nine months later, the decedent's daughter informed plaintiff that her father had not been married to McRae when he died. Plaintiff's subsequent investigation revealed a 2010 judgment of dissolution of the marriage between the decedent and McRae, as well as an unsuccessful motion by McRae to set aside the default judgment of marriage dissolution filed in 2022. Plaintiff thereafter filed a motion with the DOL to

3

set aside the ALJ order approving the settlement and attorney fees and costs because of McRae's fraudulent procurement thereof.

Plaintiff filed a verified complaint against defendants and McRae for conversion, imposition of a constructive trust, unjust enrichment, and declaratory and injunctive relief, and plaintiff sued McRae for fraud while its motion with the DOL was still pending.

Defendants filed an anti-SLAPP motion asserting that plaintiff's claims against them arose from protected activity under section 425.16, subdivision (e); plaintiff could not prevail on its conversion claim because plaintiff had no ownership right to the ALJ-ordered attorney fees and costs plaintiff paid to defendants; the litigation privilege (Civ. Code, § 47) was an absolute bar to liability; and the economic loss rule barred plaintiff's claims.

In opposition, plaintiff argued the motion was untimely, the illegal conduct at issue was not covered by the anti-SLAPP statute, defendants had not identified all allegations of protected activity and the claims arising therefrom, and plaintiff's claims did not arise from protected activity because they arose from McRae's fraud and that fraud was not an issue of public importance. Plaintiff also argued that it had established a probability of prevailing because the evidence showed "McRae wrongfully took possession of the . . . $425,000 death benefit claim . . . and that . . . McRae has no legitimate claim to that property. Further, [plaintiff] has a right to exclusive possession

4

of the $30,000 in fees that were wrongly received by [defendants] for representing . . . McRae in her fraudulent death benefit claim. [Plaintiff] was entitled to retain possession of the $425,000 death benefit received by . . . McRae and $30,000 fees received by [defendants]."

The trial court granted defendants' motion. As to the first prong of the anti-SLAPP test, citing, among other cases, *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 (*Rusheen*) (discussed in more detail later herein), the court found the claims arose from defendants' representation of McRae, an act in furtherance of the right to petition protected under section 425.16, subdivision (e)(1)–(2). The court rejected plaintiff's argument that defendants engaged in illegal conduct because plaintiff "submitted no evidence of illegal conduct by the [defendants]."

Addressing the second prong of the anti-SLAPP test, the court found plaintiff's claims were barred by the litigation privilege, which plaintiff ignored entirely. The court also found that plaintiff failed to establish a conversion claim. Specifically, the court determined that plaintiff failed to demonstrate its right to the $30,000 paid to defendants or that defendants' receipt of that money was wrongful. The court noted that the ALJ's order has not been reversed, vacated, or overturned.

## DISCUSSION

Plaintiff's main arguments in this appeal are that defendants' motion should have been rejected at the first step of the anti-SLAPP analysis because plaintiff's claims do not arise from protected activity, the illegality exception to the anti-SLAPP

statute applies, and, even if defendants satisfied prong one of the anti-SLAPP analysis, plaintiff established a probability of prevailing on the merits. We address and ultimately reject each argument in turn below. In doing so, we focus on plaintiff's conversion claim because plaintiff maintains that its other claims are derivative of the conversion claim. (See *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 896 [derivative claims stood or fell together in anti-SLAPP analysis where plaintiff failed to allege they arose from different conduct].)[2]

## I. Governing Legal Principles

Section 425.16 provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Under the statutory scheme, an " 'act in furtherance of a person's right of petition or free speech' " includes "(1) any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under

---

[2] Plaintiff forfeited any argument that a different analysis applies to these claims. (See *Six4Three, LLC v. Facebook* (2025) 109 Cal.App.5th 635, 649.)

6

consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1)–(2).)

A trial court presented with a motion to strike engages in a two-step process. " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.' [Citation.] If the court finds a showing has been made under the first step, 'it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' " (*Six4Three, LLC v. Facebook, Inc.*, *supra*, 109 Cal.App.5th at p. 644.) To satisfy this burden, the plaintiff must demonstrate that each of the claims alleged is both legally sufficient and supported by proof upon competent evidence. (*Id.* at p. 654.)

We review the trial court's determination on a motion to strike de novo, engaging the same two-step process as the trial court. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

## II.   Prong One:  Protected Activity

As an initial matter, we reject plaintiff's contention that defendants' motion fails under *Baral v. Schnitt* (2016) 1 Cal.5th 376, and *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, because defendants failed "to identify what acts each challenged claim rests on and to show how those acts are protected." (*Bonni*, at p. 1009.) *Baral* and *Bonni* require an allegation-by-allegation approach with so-called mixed causes of action where a single cause of action rests on multiple factual bases, some of which constitute protected activity and some of

7

which do not. (*Baral*, at pp. 394–396; *Bonni*, at p. 1012.) These authorities are inapposite here because defendants did not argue plaintiff's claims rested on protected and nonprotected activity. Instead, they argued plaintiff's lawsuit arose entirely from allegations of protected activity.

Turning to the substance of the first prong of the anti-SLAPP analysis, we focus on "the defendant's activity that gives rise to his or her asserted liability" and "whether the cause of action is based on the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92, 89, italics omitted.) "Critically, 'the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citations.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently

8

form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063, italics omitted.) "[A] claim may be struck [under section 425.16] only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.)

We thus consider whether defendants' protected activity forms the basis of their liability as to any element of plaintiff's conversion claim. (*Park, supra*, 2 Cal.5th at p. 1063.) " 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.' " (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 221.) Where there is "no *wrongful* act or disposition" a conversion claim fails. (*Id.* at p. 222; see also *Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572, 1581 [where employer instructed defendant to take documents home, cause of action for conversion failed because possession was not "wrongful"]; *Newhart v. Pierce* (1967) 254 Cal.App.2d 783, 792–793 [where plaintiff authorized defendant to take certain cattle, defendant did not wrongfully convert those cattle].)

We conclude that plaintiff's claims arise from protected activity. An element giving rise to defendants' liability is " '[c]onversion by a wrongful act or disposition of property rights.' " (*Spates*, *supra*, 114 Cal.App.4th at p. 221.) Reviewing

9

the complaint and evidence plaintiff submitted, plaintiff's theory of conversion is that defendants took wrongful possession of $30,000 through the prosecution of an allegedly false death benefits claim under the LHWCA. Plaintiff pleaded McRae wrongfully "interfered with the [p]laintiff's ownership and right to possession of the $425,000.00 death benefits by falsely claiming she was the decedent's widow," defendants "wrongly received $30,000.00 in fees in representing [McRae's] fraudulent death benefit claim," and they refused to return the money. Plaintiff also pleaded the wrongful acts supporting a constructive trust were the "misrepresentations and otherwise wrongful manner in which . . . McRae obtained her alleged . . . interest . . . to the $425,000 death benefit." The declaration submitted along with plaintiff's anti-SLAPP opposition tracks plaintiffs' complaint, stating the ALJ approved the settlement "pursuant to [McRae's] representation" that she was the decedent's widow when she was not, and McRae was not entitled to compensation or defendants to attorney fees. Thus, the wrongful acts causing plaintiff's injury were the pursuit of the allegedly false death benefits claim and procurement of the settlement and ALJ order, which were protected activities.[3] (§ 425.16, subd. (e)(1), (2).)

_____

[3] Plaintiff also concedes the gravamen of its claim in various parts of its briefing below and on appeal. Below, plaintiff wrote that the "core of the [c]omplaint" is that McRae "made false representations as to her marital status, inducing [p]laintiff to pay her death benefits" and attorney fees. On appeal, plaintiffs write, "[Plaintiff] has demonstrated that the fees that [defendants] were awarded we[r]e part of the settlement funds, which were based on fraudulent misrepresentations of [McRae's]

10

We find the reasoning of *Rusheen*, *supra*, 37 Cal.4th 1048,
instructive, although our high court there addressed the scope of
the litigation privilege under prong two of the anti-SLAPP
analysis rather than the related but separate issue of the scope of
protected conduct under prong one.  The litigation privilege
" 'applies to any communication (1) made in judicial or quasi-
judicial proceedings; (2) by litigants or other participants
authorized by law; (3) to achieve the objects of the litigation; and
(4) that have some connection or logical relation to the action.' "
(*Id.* at p. 1057.)  Although not all communications protected by
the litigation privilege are protected activity under section
425.16, both statutes "serve similar policy interests, and courts
'look[ ] to the litigation privilege . . . as an aid in construing the
scope of section 425.16' " in the first step of the anti-SLAPP
inquiry.  (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1263,
quoting *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 (*Flatley*).)

*Rusheen* held that "where the cause of action is based on a
communicative act, the litigation privilege extends to those
noncommunicative actions which are necessarily related to that
communicative act." (*Rusheen, supra*, 37 Cal.4th at p. 1052.)  In
*Rusheen*, a cross-complainant sued for abuse of process based on
the cross-defendant's filing of allegedly false declarations of
service to get a default judgment and writ of execution allowing

---

marital status.  Had . . . McRae been truthful about her marital
status, there would not have been any settlement at all, and
therefore no fee award.  Therefore, as to conversion (as well as
unjust enrichment), [plaintiff] has demonstrated how
[d]efendant[s] wrongfully disposed of [plaintiff]'s money."

him to levy on the cross-complainant's property.[4]  (*Id.* at pp. 1052–1053.)  The high court concluded that "the gravamen of the action was not the levying act, but the procurement of the judgment based on the use of allegedly perjured declarations of service."  (*Id.* at p. 1062.)  "[B]ecause the execution of the judgment did not provide an independent basis for liability separate and apart from the filing of the false declarations of service, the gravamen of the action was the procurement of the judgment, not its enforcement."  (*Id* at p. 1065.)  Stated otherwise, the levy transferring the debtor's property necessarily arose from communications made in a judicial proceeding.  (*Id.* at pp. 1062–1063.)  "[T]he postjudgment enforcement efforts, including the application for writ of execution and act of levying on property, were protected by the privilege."  (*Id.* at p. 1052.)  The trial court's striking of the cross-complaint under section 425.16 was therefore proper.  (*Id.* at p. 1065.)

Here, the payment of $30,000 by plaintiff to defendants was ordered by the ALJ.  Like *Rusheen*, defendants' receipt and related retention of that money did not provide an independent basis for liability separate and apart from the prosecution of the allegedly false death benefits claim and procurement of the ALJ order, so the gravamen of the action was the protected acts of

---

[4] A cause of action for abuse of process has two essential elements:  "[T]he defendant has (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner."  (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792.)

12

prosecuting the allegedly false death benefits claim and the procurement of the ALJ order.

Plaintiff does not discuss *Rusheen* and contends instead that *Drell v. Cohen* (2014) 232 Cal.App.4th 24 (*Drell*), and *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388 (*Optional Capital*) are persuasive. We disagree.

In *Drell, supra*, 232 Cal.App.4th 24, attorney Cohen represented an injured party in a personal injury action. When he withdrew from representation, the injured party retained Drell, and Drell negotiated a settlement. (*Id.* at pp. 26–27.) Cohen asserted a lien in a demand letter to an involved insurer, and the insurer made the settlement check payable to both Drell and Cohen. (*Id.* at p. 27.) Drell filed a declaratory relief action to determine the status of Cohen's lien, and Cohen filed an anti-SLAPP motion, contending the declaratory relief action arose from "protected activity of asserting a lien in a demand letter that threatened litigation." (*Ibid.*) The court disagreed. The demand letter may have been protected, but the complaint did not allege Cohen engaged in wrongdoing by asserting a lien. (*Id.* at p. 30.)

*Optional Capital, supra*, 222 Cal.App.4th at page 1392, involved "an extremely tangled thicket of legal proceedings" in state and federal court and in Switzerland. Optional was a Korean venture capital firm and alleged that, in 2001 pursuant to a conspiracy, DAS and the Kim parties took control of Optional and used their fiduciary positions to issue stock to Christopher Kim, convert more than $30 million of Optional's property, and

13

manipulate the market for Optional's stock. (*Id.* at pp. 1392–1393.) Proceeds of the scheme were deposited in California bank accounts controlled by the Kim parties. (*Ibid.*) In 2002, the Kim parties created Alexandria and transferred the money misappropriated from Optional into a bank account in Alexandria's name. (*Ibid.*) In 2003, DAS sued the Kim parties in Los Angeles Superior Court (the state litigation) alleging they solicited funds from investors (including DAS) but laundered the money. (*Ibid.*) That same year, Alexandria transferred $15 million of Optional's converted money to a Swiss bank account. (*Ibid.*) Some years later, DAS instigated a criminal action in Switzerland against Christopher Kim and Alexandria and froze funds in Alexandria's Swiss bank account. (*Id.* at p. 1394.) In 2008, Optional won a federal judgment against Alexandria and the Kim parties based on the looting of its assets. (*Ibid.*) In 2010, DAS settled the state litigation, the Swiss government learned of the settlement, and, at a hearing in the criminal action instigated by DAS with DAS and Alexandria present, the Swiss government lifted DAS's freeze and the funds in Alexandria's Swiss bank account were released to DAS. (*Id.* at p. 1395.)

In a subsequent state court suit, Optional sued DAS for conversion and fraudulent conveyance. (*Optional Capital*, *supra*, 222 Cal.App.4th at p. 1395.) DAS filed an anti-SLAPP motion, and the appellate court held the conversion and fraudulent transfer claims against DAS did not fall within the scope of the anti-SLAPP statute. (*Id.* at pp. 1392–1396, 1400–1401.) It reasoned that Optional had not sued DAS for settling its dispute

14

with the Kim parties, and the state litigation settlement between DAS and the Kim parties was merely the "device" used to persuade the Swiss government to release Optional's funds to DAS.  (*Id.* at pp. 1400–1401.)  Indeed, the appellate court recognized that the conversion at issue occurred when the Kim parties, in conspiracy with DAS, "took a specific sum of money from Optional in breach of their fiduciary duties before transferring the spoils of their activities to California."  (*Id.* at p. 1402.)

Neither *Drell* nor *Optional Capital* involved a situation such as the one here where an ALJ approved a settlement and ordered one party to an administrative proceeding to pay compensation to another party and to pay attorney fees directly to her counsel, that party did so, and then sued to recover the money paid because the ALJ order requiring the payment was procured by the prosecution of an allegedly false claim in the administrative law proceeding.  (Cf. *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 570–573 [distinguishing *Drell* and *Optional Capital* where anti-SLAPP respondents allegedly settled insurance claims in derogation of attorneys' fee lien].)  Here, the wrongful acts by which defendants received possession of the $30,000 were the prosecution of McRae's fraudulent death benefit claim and procurement of the ALJ order.  This case is thus more like *Rusheen* than *Drell* or *Optional Capital*.

Plaintiff next contends that the anti-SLAPP statute does not apply because defendants' activity is illegal as a matter of

15

law.  Our high court has created a very narrow exception to the application of the anti-SLAPP statute "where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence."  (*Flatley*, *supra*, 39 Cal.4th at p. 316.)  In *Flatley*, the conclusive evidence was an extortionate letter written by the attorney defendant.  (*Id.* at pp. 307–309.)  Here, plaintiff's illegality argument relies entirely on the provision of the LHWCA that criminalizes the making of a knowing and willful false statement or representation by a claimant or claimant's representative for the purpose of obtaining a benefit.  (33 U.S.C., § 931(a).)  Plaintiff argues that McRae made a knowing and willful false representation to obtain benefits under the LHWCA, but plaintiff fails to point to any evidence showing that defendants, as McRae's representatives, knowingly and willfully made false representations in pursuing McRae's claim such that their conduct violated the LHWCA. Plaintiff accordingly fails to show that the illegality exception to the anti-SLAPP statute applies.

III.    **Prong Two:  Probability of Prevailing**

We next analyze whether plaintiff has carried its burden of demonstrating that its claims have sufficient merit.  We conclude that plaintiff has not done so.

To begin with, the court below concluded that plaintiff failed to demonstrate that its claims were not subject to the litigation privilege (Civ. Code, § 47, subd. (b)), but plaintiff does not furnish any argument or authority in its opening brief on appeal concerning why the litigation privilege does not operate as

16

a complete bar to its claims.  It has consequently forfeited any argument that the court erred by concluding that it failed to demonstrate the litigation privilege does not apply to bar the claims.  (*Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 122; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721; see also *Balla v. Hall* (2021) 59 Cal.App.5th 652, 671 [although we review a ruling on an anti-SLAPP motion de novo, appellant bears the burden of demonstrating error].)  We accordingly conclude that plaintiff has failed to carry its burden of demonstrating that it has a probability of prevailing on the merits of its claims against defendants.

Additionally, *Rusheen, supra*, 37 Cal.4th 1048 is again instructive.  The litigation privilege applies to conduct in administrative proceedings.  (*McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1163; *Mirmehdi v. U.S.* (9th Cir. 2012) 689 F.3d 975, 985.)  Here, as discussed above, the receipt and retention of money pursuant to the ALJ's order did not provide "an independent basis for liability separate and apart from the filing [and prosecution of the allegedly false death benefits claim]." (*Rusheen,* at p. 1065.)  The gravamen of plaintiff's claim was the prosecution of the allegedly false death benefits claim and procurement of the ALJ order, so the litigation privilege applies to the necessarily related acts of receipt and retention of money pursuant to the ALJ order.  (*Ibid.*)

Plaintiff contends that it carried its burden on prong two of the anti-SLAPP analysis because it obtained a temporary restraining order against McRae early in the case.  Plaintiff

17

makes this argument without addressing the litigation privilege, so we remain unconvinced. Furthermore, the record shows that defendants had not appeared in this case when plaintiff obtained the temporary restraining order against McRae, there is no indication that McRae opposed plaintiff's request, and there is no indication the litigation privilege was raised.

Finally, plaintiff advances, in scattershot fashion, several additional arguments for why we should reverse the judgment that are unsupported by authority and reasoned argument and/or were not raised below. For example, plaintiff simply asserts that we should decline to apply the anti-SLAPP statute because, even if this lawsuit arose from protected activity, the application of section 425.16 is against the public interest. And plaintiff contends for the first time on appeal that it sued defendants because they were indispensable parties, the trial court's order should be reversed because New York law differs from California law and because a Texas court denied what plaintiff says was an "identical" motion. None of these scattershot claims provides a reasoned basis for us to reverse the order at issue.

Defendants request attorney fees and costs on appeal. (See *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499–1500 [a prevailing defendant on a special motion to strike pursuant to section 425.16 is entitled to appellate attorney fees].) We remand the case to the trial court to consider defendants' request for attorney fees and costs incurred on appeal under section 425.16, subdivision (c).

18

## DISPOSITION

The order is affirmed.  The matter is remanded to the trial court for consideration of defendants' request for attorney fees and costs incurred in this appeal under section 425.16, subdivision (c).  Defendants shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


BROWN, P. J.


WE CONCUR:

STREETER, J.
MOORMAN, J.*


*Homeport Insurance v. McRae*  (A172243)

---

\* Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.