164 Cal.App.4th 868 (2008)
BEATRICE COHEN et al., Plaintiffs and Appellants,
v.
NUVASIVE, INC., Defendant and Respondent.
SUSAN SZYMANSKI et al., Plaintiffs and Appellants,
v.
NUVASIVE, INC., Defendant and Respondent.
No. B194078.
Court of Appeals of California, Second District, Division Three.
July 9, 2008.
*871 Kiesel Boucher Larson, Raymond P. Boucher, Michael Eyerly; Arias, Ozzello & Gignac, Mike M. Arias, Arnold C. Wang; Lieff, Cabraser, Heimann & Bernstein, Barry R. Himmelstein and Kent L. Klaudt for Plaintiffs and Appellants.
Morris Polich & Purdy, Roger G. Perkins and Mark E. Hellenkamp for Defendant and Respondent.

OPINION
CROSKEY, Acting P. J.
Beatrice Cohen, Susan Szymanski, and others appeal judgments dismissing their complaints against NuVasive, Inc. (NuVasive), after the court sustained demurrers without leave to amend. Plaintiffs allege that NuVasive purchased human remains from bodies of their close family members that had been donated to the University of California at Los Angeles (UCLA) for medical research and education. They allege that the sale of human remains was illegal and contrary to representations made to the donors by UCLA. They allege that NuVasive knew or should have known that the sales were improper, that NuVasive mistreated and misused the remains, and that plaintiffs suffered emotional injury when they discovered the actual facts. They allege counts against NuVasive for negligence, fraud, and intentional infliction of emotional distress. The court sustained the *872 demurrers to the negligence counts based on the absence of a duty of care, and sustained the demurrers to the other counts for other reasons.
(1) Plaintiffs contend NuVasive owed them a duty of care based primarily on the foreseeability of their emotional injury.[1] We agree and conclude that the facts alleged in the complaints are sufficient to establish a duty of care and that the sustaining of the demurrers to the negligence counts was error. We conclude further, however, that plaintiffs have shown no error in the sustaining of the demurrers to their other counts.

FACTUAL AND PROCEDURAL BACKGROUND
Cohen and others filed separate class action complaints against Regents of the University of California and others, alleging the improper purchase and sale of human remains that had been donated to UCLA's Willed Body Program. The court ruled that the actions were related and ordered the filing of a first amended master class complaint.
The first amended master class complaint filed in August 2005 alleged nine counts against Regents of the University of California, Henry Reid as the former director of the Willed Body Program, Johnson & Johnson, Depuy Mitek, Inc. (Depuy Mitek), NuVasive, and others. NuVasive demurred to the complaint, as did Johnson & Johnson and Depuy Mitek jointly. The court concluded that the complaint failed to allege facts sufficient to establish that those three defendants, whom the court referred to as the "corporate purchaser defendants," had a duty of care to protect plaintiffs from emotional injury. The court sustained with leave to amend defendants' demurrers to counts for negligence, fraudulent concealment, and intentional infliction of emotional distress, and sustained without leave to amend their demurrers to the count for intentional interference with human remains. The court granted plaintiffs leave to amend the complaint to allege the existence of a joint enterprise, pursuant to plaintiffs' request. The court also sustained a demurrer by Regents of the University of California, with leave to amend as to some counts and without leave to amend as to others.
Cohen and others (the Cohen plaintiffs) filed a second amended master class complaint against the same defendants in April 2006. They allege that *873 the Cohen plaintiffs are all close family members of the decedents. They allege that UCLA represented to the donors that the bodies would be treated with dignity and respect and that "[o]nly medical faculty, students, staff, or students in health-related professions" would have access to the donated remains. They also allege that UCLA represented to the donors that human bodies and body parts could not legally be sold. They allege that UCLA improperly sold bodies and body parts to other defendants and that the other defendants, including NuVasive, knew or reasonably should have known that the donated remains were not intended for sale or for the uses to which the purchasers put the remains. They allege further that defendants mistreated and commingled the remains. They allege that defendants used a middleman as part of a fraudulent scheme to avoid detection.[2] The Cohen plaintiffs allege counts against all defendants for negligence, fraudulent concealment, and intentional infliction of emotional distress, and allege additional counts against Regents of the University of California and Reid. Defendants demurred to the complaint.
The court concluded that the complaint failed to allege facts sufficient to establish that NuVasive owed plaintiffs a duty of care, as required to support liability for negligence. It also concluded that the complaint failed to adequately allege reliance as required to support liability for fraudulent concealment, and that the complaint failed to allege either that NuVasive intended to cause emotional distress or acted recklessly in the presence of plaintiffs as required to support liability for intentional infliction of emotional distress. The court sustained without leave to amend NuVasive's demurrer to each count alleged against NuVasive and entered a judgment dismissing the complaint.[3] Plaintiffs appealed the judgment (No. B194078).
Szymanski and others (the Szymanski plaintiffs) commenced a separate action in March 2006 by filing a complaint against Regents of the University of California, Reid, Johnson & Johnson, Depuy Mitek, NuVasive, and others. *874 They allege counts against all defendants for negligence, fraudulent concealment, negligent misrepresentation, and intentional infliction of emotional distress, and allege additional counts against Regents of the University of California and Reid. The case was assigned to the same judge as the Cohen action. The court sustained without leave to amend NuVasive's demurrer to each count alleged against NuVasive and entered a judgment dismissing the complaint. The Szymanski plaintiffs appealed the judgment (No. B196905). We have consolidated the two appeals.[4]

CONTENTIONS
Plaintiffs' principal contention is that it was foreseeable that NuVasive's purchase of substantial quantities of human remains would induce UCLA to breach its duty to plaintiffs and would result in emotional injury, so NuVasive owed plaintiffs a duty of care to prevent that injury. Plaintiffs also contend the complaint adequately alleges conduct directed at them as required to support liability for intentional infliction of emotional distress.[5]
NuVasive contends controlling opinions by the California Supreme Court compel the conclusion that the foreseeability of injury did not create a duty to plaintiffs in these circumstances, and a duty of care cannot be based on a statute because plaintiffs had no statutory right to dispose of the remains.

DISCUSSION

1. Standard of Review

We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action. (McCall v. PacifiCare of Cal., Inc. (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (Ibid.) We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

*875 2. Duty of Care in "Direct Victim" Negligence Cases

(2) The elements of a negligence cause of action are (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages. (Merrill v. Navegar, Inc. (2001) 26 Cal.4th 465, 500 [110 Cal.Rptr.2d 370, 28 P.3d 116].) The existence of a duty of care is a question of law to be determined by the court alone. (Id. at p. 501; Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 674, 678 [25 Cal.Rptr.2d 137, 863 P.2d 207].) "`[D]uty' is not an immutable fact of nature `"but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."' [Citation.]" (Ballard v. Uribe (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)
(3) The general rule is that each person has a duty to exercise ordinary care to avoid causing injury to others. (Civ. Code, § 1714, subd. (a); Rowland v. Christian (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561].) A departure from this fundamental principle is justified only if public policy clearly supports such an exception. (Merrill v. Navegar, Inc., supra, 26 Cal.4th at pp. 501-502; Rowland, supra, at p. 112.) The factors to consider in determining the existence and scope of duty include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]"[6] (Rowland, supra, at p. 113.)
(4) Liability for emotional distress caused by the defendant's negligence generally is analyzed by reference to two distinct theories of recovery, the "bystander" and "direct victim" theories. (Burgess v. Superior Court (1992) 2 Cal.4th 1064, 1071 [9 Cal.Rptr.2d 615, 831 P.2d 1197] (Burgess).) "Bystander" cases involve a plaintiff who witnessed the injury of another person and suffered emotional distress as a result. The defendant's duty is a duty to avoid causing emotional distress to persons who observe conduct that causes harm to others. (Id. at pp. 1072-1073.) The California Supreme Court has limited the class of bystanders to whom a defendant owes a duty to avoid negligently inflicting emotional distress. (Thing v. La Chusa (1989) 48 Cal.3d *876 644, 647 [257 Cal.Rptr. 865, 771 P.2d 814] (Thing);[7] see Dillon v. Legg (1968) 68 Cal.2d 728, 740-741 [69 Cal.Rptr. 72, 441 P.2d 912] (Dillon).[8])
"Direct victim" cases, in contrast, involve other circumstances where a plaintiff suffers emotional distress as a result of the breach of a duty owed directly to the plaintiff. (Burgess, supra, 2 Cal.4th at p. 1073.) The defendant's duty owed to the plaintiff must be a duty "that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." (Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc. (1989) 48 Cal.3d 583, 590 [257 Cal.Rptr. 98, 770 P.2d 278] (Marlene F.); accord, Burgess, supra, at p. 1073.) In "direct victim" cases, the limits on the existence of a duty in "bystander" cases do not apply. (Burgess, supra, at p. 1073.) "Rather, well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." (Ibid.)
The primary question here is whether NuVasive owed plaintiffs a duty of care as direct victims.[9] Several prior opinions by the California Supreme Court bear on this question.

a. Molien v. Kaiser Foundation Hospitals

Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813] (Molien) involved a woman who was misdiagnosed with syphilis. The doctor instructed her to inform her husband. The husband sued his wife's doctor, alleging that the negligent misdiagnosis resulted in the breakup of their marriage, and sought damages for emotional distress and loss of consortium. (Id. at pp. 919-920.) Molien stated that the plaintiff was a "direct victim of the assertedly negligent act," rather than "a percipient *877 witness to the injury of a third person." (Id. at pp. 922-923.) Molien concluded that the guidelines from Dillon, supra, 68 Cal.2d 728, therefore did not apply. Molien stated that it was reasonably foreseeable that a misdiagnosis of syphilis would cause marital discord. (Molien, supra, at p. 923.) Molien continued: "We thus agree with plaintiff that the alleged tortious conduct of defendant was directed to him as well as to his wife. Because the risk of harm to him was reasonably foreseeable we hold, in negligence parlance, that under these circumstances defendants owed plaintiff a duty to exercise due care in diagnosing the physical condition of his wife." (Ibid.) Molien did not discuss the other Rowland factors. Molien also held that damages may be recovered for negligently inflicted emotional distress unaccompanied by physical injury. (Id. at pp. 927-931.)

b. Ochoa v. Superior Court

Ochoa v. Superior Court (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1] (Ochoa) involved a child who died in a county juvenile hall after receiving inadequate medical attention. (Id. at pp. 163-164.) The child's parents sued the county, seeking damages for emotional distress. Ochoa held that the parents alleged sufficient facts to support recovery under a "bystander" theory (id. at pp. 170-172 & p. 165, fn. 6), but that they could not recover as "direct victims" because they failed to allege conduct that was "by its very nature directed at" the plaintiffs (id. at pp. 172-173).[10]

c. Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.

Marlene F. involved children who were sexually molested by a psychotherapist who was treating both the children and their mothers. (Marlene F., supra, 48 Cal.3d at pp. 585-586.) The mothers sued the psychotherapist and clinic, alleging that they suffered emotional distress as a result of their children's molestation. (Id. at p. 586.) Marlene F. stated that the existence of a duty of care "`depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability.' [Citation.]" (Id. at p. 588.) Marlene F. stated of Molien, supra, 27 Cal.3d 916: "Our decision did not, however, purport to create a cause of action for the negligent infliction of emotional distress based solely upon the foreseeability that serious emotional distress might result. It is plainly foreseeable, for example, that close family members of a patient would suffer severe emotional distress if told the patient had been diagnosed as suffering from a terminal illness, but without more, the patient's physician would not be liable for that distress whether or not the diagnosis was erroneous. (Cf. Justus v. *878 Atchison (1977) 19 Cal.3d 564, 585 [139 Cal.Rptr. 97, 565 P.2d 122].) Damages for severe emotional distress, rather, are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two. Our decision in Molien v. Kaiser Foundation Hospitals, supra, 27 Cal.3d 916, acknowledged this, and permitted recovery for the emotional distress suffered by the husband when his wife's doctor not only erroneously diagnosed the wife as suffering from a sexually transmitted disease but affirmatively acted to have that misdiagnosis communicated to her husband. By directing the husband be told of a diagnosis that foreseeably would disrupt the marital relationship and require the husband to be physically examined, the doctor assumed a duty to convey accurate information and the husband accordingly was a `direct victim' of the doctor's negligence." (Marlene F., supra, 48 Cal.3d at pp. 589-590, fn. omitted.)
Marlene F. concluded that the psychotherapists owed a duty of care to the mothers because the mothers were their patients, the defendants' tortious conduct was directed against both the children and their mothers, and the emotional injury to the mothers resulting from the molestation was foreseeable. (Marlene F., supra, 48 Cal.3d at pp. 590-591.) Thus, Marlene F. explained that a defendant's duty in a "direct victim" case is not based on foreseeability alone, but arises from a relationship between the plaintiff and defendant (such as psychotherapist-patient) or from conduct purposely directed at the plaintiff (such as a doctor's direction to inform the plaintiff), or otherwise "is assumed by the defendant or imposed on the defendant as a matter of law, or ... arises out of a relationship between the two." (Id. at p. 590.)

d. Christensen v. Superior Court

Christensen v. Superior Court (1991) 54 Cal.3d 868 [2 Cal.Rptr.2d 79, 820 P.2d 181] (Christensen) involved the alleged mishandling of decedents' remains. Family members of the decedents who did not personally observe the mishandling sued the mortuaries and crematoria that had contracted to provide funeral and crematory services. (Id. at pp. 876-877.) The plaintiffs also sued Carolina Biological Supply Company (Carolina), which allegedly had purchased body parts from the crematory defendants without the plaintiffs' authorization. (Id. at p. 878.) The plaintiffs sought damages for emotional distress. (Id. at p. 879.) The trial court ruled on the plaintiffs' standing to sue. The Court of Appeal and California Supreme Court regarded the ruling as in the nature of a ruling on a demurrer. (Id. at p. 876.) Christensen rejected the defendants' argument that the right to recover damages for emotional distress caused by the mishandling of human remains was limited *879 to family members who actually witnessed the mishandling, as would be required in a "bystander" case. (id. at p. 883.) Christensen distinguished the "bystander" cases: "Moreover, the line of negligence decisions commencing with Dillon and culminating in Thing all arise in the context of physical injury or emotional distress caused by the negligent conduct of a defendant with whom the plaintiff had no preexisting relationship, and to whom the defendant had not previously assumed a duty of care beyond that owed to the public in general. The plaintiffs had not themselves been threatened with physical injury and their emotional distress did not arise out of fear for their own safety. They sought to recover for emotional distress suffered as a result of observing the negligently caused injury of another. It was foreseeable that such persons would suffer emotional distress, but because it was foreseeable that any person who observed the injury-producing event would suffer some emotional distress and the class of potential plaintiffs was limitless, the court undertook to define and circumscribe the class to whom the defendant owed a duty. (Thing v. La Chusa, supra, 48 Cal.3d 644, 652; Dillon v. Legg, supra, 68 Cal.2d 728, 733-735.)" (Christensen, supra, 54 Cal.3d at pp. 884-885.)
Christensen cited the Rowland factors and concluded that they did not compel the conclusion that the limits on a bystander's recovery of emotional distress damages applied in other situations. (Christensen, supra, 54 Cal.3d at pp. 885-886, 894-900.) Christensen noted the "unique context" of the dispute in that it concerned funeral-related services (id. at p. 886),[11] stated that funeral-related services ordinarily are not performed for the benefit of the contracting family member alone (id. at pp. 886-888), and concluded that all close family members who were aware that funeral or crematory services were being performed and for whose benefit those services were rendered may recover damages for emotional distress (id. at pp. 875, 890), "regardless of which family member held the statutory right or actually contracted for the services" (id. at p. 890).[12]
*880 Christensen, supra, 54 Cal.3d 868, stated with respect to the mortuary and crematory defendants: "We recognized in Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra, 48 Cal.3d 583, 590, that damages for severe emotional distress may be recovered `when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a special relationship between the two.' Defendants here assumed a duty to the close relatives of the decedents for whose benefit they were to provide funeral and/or related services. They thereby created a special relationship obligating them to perform those services in the dignified and respectful manner the bereaved expect of mortuary and crematory operators. The existence of this duty distinguishes the negligence action pleaded here from those of the bystanderwitnesses who were plaintiffs in Thing v. La Chusa, supra, 48 Cal.3d 644, and Dillon v. Legg, supra, 68 Cal.2d 728." (Christensen, supra, 54 Cal.3d at pp. 890-891, fns. omitted.)
Christensen, supra, 54 Cal.3d 868, stated that Carolina did not assume any duty related to funeral services, but held that Carolina as the purchaser of body parts could be liable based on another duty: "We agree that Carolina, unlike the other defendants, did not assume any duty related to the delivery of funeral-related services. One theory on which it is sued, however, is that it negligently contracted for and purchased human organs from the crematory defendants under circumstances in which it knew or should have known that the crematories had not complied with the laws of this state, which prohibit removal and sale of human organs absent the consent of the decedent or the statutory right holder. Plaintiffs do not seek to impute liability to Carolina for the negligence of the crematory defendants, but to hold Carolina liable on a theory that it encouraged or induced the unlawful conduct of the crematory defendants.
"Negligence in procuring injury-producing conduct of another may subject the negligent actor to liability for that conduct. `A's own wrong may have contributed in some way to the causing of harm to C through B's wrongful conduct. A may have commanded or procured that very wrong.' (5 Harper et al., The Law of Torts (2d ed. 1986) § 26.1, p. 3.) Where a defendant has induced another to act in circumstances under which it is foreseeable that the conduct will cause injury to a third party, liability is found.
*881 "This principle, recognized in section 302A of the Second Restatement of Torts, underlies the decision of this court in Pool v. City of Oakland (1986) 42 Cal.3d 1051 [232 Cal.Rptr. 528, 728 P.2d 1163]. There we held that a supermarket which negligently accused a customer of felonious conduct and summoned police, could foresee that the resulting police investigation and arrest of the innocent plaintiff would cause emotional distress for which the supermarket was liable. While the police conduct may have been wrongful, the defendant was a proximate cause of the injury. (Id. at pp. 1064, 1065.) `If the likelihood that a third person may react in a particular manner is a hazard which makes the actor negligent, such reaction whether innocent or negligent does not prevent the actor from being liable for the harm caused thereby.' (Weirum v. RKO General, Inc. (1975) 15 Cal.3d 40, 47 [123 Cal.Rptr. 468, 539 P.2d 36] [duty to decedent killed in auto crash established by foreseeability that inviting members of radio audience to be first to arrive at location would encourage reckless driving]. See also, Dietz v. Illinois Bell Telephone Co. (1987) 154 Ill.App.3d 5[5]4 [507 N.E.2d 24, 26, 107 Ill.Dec. 360] [defendant liable for trespass if defendant knows that party with whom defendant contracts will enter another's land to perform contract without obtaining required consents]; Clark v. Library of Congress (D.C. Cir. 1984) 750 F.2d 89, 98 [242 App.D.C. 241] [inducing violation of plaintiff's civil rights].)" (Christensen, supra, 54 Cal.3d at pp. 891-892, fns. omitted.)
Christensen also stated that Carolina could be liable on the alternative basis of a joint enterprise theory. (Christensen, supra, 54 Cal.3d at p. 893.) Christensen stated further that Carolina's conduct in inducing the crematory defendants to remove and sell body parts in violation of Health and Safety Code section 7051 could constitute negligence per se. (Id. at pp. 893-894.)
Christensen concluded that if it was reasonably foreseeable that Carolina's offering to purchase substantial quantities of body parts from the crematory defendants would induce those defendants to remove body parts for the purpose of sale without the required consent of the statutory right holders, Carolina could be liable to the plaintiffs for their resulting emotional distress. (Christensen, supra, 54 Cal.3d at pp. 893-894.)
Considering the Rowland factors, the Christensen court concluded that the imposition of a duty of care was consistent with the moral blame attached to the defendants' conduct and that potential liability would promote the goal of preventing future harm of a similar nature. (Christensen, supra, 54 Cal.3d at pp. 894, 896-898.) Because the number of close relatives who were aware that funeral-related services were being performed and for whose benefit the services were rendered was relatively small and because the "egregious and intentional" misconduct was within the defendants' control, Christensen *882 concluded that the burden to the defendants and consequences to the community of imposing a duty of care were acceptable and that the cost of preventing similar misconduct was minimal. (Id. at p. 898.)
Christensen distinguished Thing, supra, 48 Cal.3d 644, further by stating that the Thing court was concerned about a defendant's potential liability to an unlimited number of bystanders, "out of all proportion to the culpability of the negligent actor.... [Citation.] Here, by contrast, the emotional injury is suffered by persons for whom the defendants have undertaken to provide a service, the very purpose of which is to alleviate existing and avoid future emotional distress arising from the death." (Christensen, supra, 54 Cal.3d at p. 899.) Christensen stated that the class of plaintiffs in Christensen was limited to "only those close relatives who were aware both of the death of a loved one and the nature of the funeral-related services that were to be performed on their behalf." (Id. at p. 900.)
Christensen did not expressly state whether the duty that Carolina owed to the plaintiffs was a duty "`assumed by the defendant or imposed on the defendant as a matter of law,'" or a duty "`that arises out of a special relationship.'" (Christensen, supra, 54 Cal.3d at p. 890.) It appears that Carolina either assumed a duty through its affirmative conduct of purchasing human remains under circumstances in which it knew or reasonably should have known that the crematoria had not obtained the required consent, or that the duty was imposed as a matter of law based on the foreseeability of emotional injury in connection with the mishandling of the remains, the moral blame attached to the misconduct, the goal of preventing future harm of a similar nature, and the limited burden to the defendants and consequences to the community of imposing a duty of care in those circumstances.

e. Burgess v. Superior Court

Burgess involved a child who was injured during birth. (Burgess, supra, 2 Cal.4th at pp. 1069-1070.) The mother sued the doctor and the hospital, alleging negligence and seeking damages for emotional distress. (Id. at p. 1070.) Burgess stated that to the extent that Molien, supra, 27 Cal.3d 916, might have suggested that foreseeability alone determined the existence of a duty in a "direct victim" case, Molien should not be followed and should be limited to its facts. (Burgess, supra, at p. 1074.) Burgess concluded that the defendants owed the plaintiff a duty of care arising from their physicianpatient relationship, and that the scope of the duty encompassed avoiding injury to the fetus and avoiding injury to the mother's emotional well-being that would result from an injury to the fetus. (Id. at pp. 1075-1076.) Burgess cited several Court of Appeal opinions recognizing a mother's right to recover emotional distress damages from a health care provider in connection *883 with obstetrical services. (Id. at pp. 1077-1078.) Considering the Rowland factors, Burgess concluded that those factors did not justify an exception to the duty of care. (Burgess, supra, at pp. 1079-1085.)

f. Huggins v. Longs Drug Stores California, Inc.

Huggins v. Longs Drug Stores California, Inc. (1993) 6 Cal.4th 124 [24 Cal.Rptr.2d 587, 862 P.2d 148] (Huggins) involved an infant who was injured by an overdose of prescription drugs. The parents sued the pharmacy. They alleged that the pharmacy negligently provided an incorrect dosage in filling the prescription, and sought damages for their emotional distress resulting from their son's overdose. (Id. at p. 127.) The parents' claim was based on both the "bystander" and "direct victim" theories. The trial court and the Court of Appeal concluded that the plaintiffs could not recover as "bystanders," and the plaintiffs did not seek review of that decision. The California Supreme Court considered only whether the plaintiffs could recover as "direct victims." (Id. at pp. 128-129.) The Supreme Court held that the parents could not recover as direct victims because they were not the patients for whom the defendant dispensed the prescribed medication. (Id. at p. 133.)
Huggins discussed Molien, supra, 27 Cal.3d 916, and its progeny involving health care providers, and concluded that those cases established that a plaintiff could recover damages as a "direct victim" only if the plaintiff was the patient of the defendant or the defendant otherwise directed its activity toward the plaintiff. (Huggins, supra, 6 Cal.4th at pp. 130-132.) Huggins stated that the defendant's duty in Molien "did not arise simply because the doctor's misdiagnosis `necessarily involved him directly' ... but because the doctor directed his patient, the wife, to advise the plaintiff husband of the diagnosis." (Huggins, supra, at p. 130.) Huggins stated, "It was only because the parents in Burgess, supra, 2 Cal.4th 1064, and Marlene F., supra, 48 Cal.3d 583, qualified as the patients of the defendant caregivers that they could recover for emotional distress as the defendants' direct victims." (Id. at p. 131.) Huggins concluded, "[t]here is no material distinction between the professional duties of pharmacists and the duties of other health care providers that allows the parent of a child patient for whom a prescription is negligently filled to recover from the pharmacist as a direct victim." (Id. at p. 132.) Huggins stated that to impose a duty on pharmacists in those circumstances "not only would increase medical malpractice insurance costs but also would tend to `inject undesirable self-protective reservations' impairing the provision of optimal care to the patient. [Citation.]" (Id. at p. 133.)

g. Potter v. Firestone Tire & Rubber Co.

Potter v. Firestone Tire & Rubber Co. (1993) 6 Cal.4th 965, 974 [25 Cal.Rptr.2d 550, 863 P.2d 795] (Potter) held that a plaintiff in a negligence *884 action who has suffered no present physical injury or illness can recover damages for emotional distress caused by fear of cancer after exposure to a carcinogen only in certain circumstances. Potter stated that prior California law had established "that there is no duty to avoid negligently causing emotional distress to another, and that damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff. [Citation.]" (Id. at p. 984.) Potter then qualified that statement by stating, "[t]he lesson of these decisions is: unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty."[13] (Id. at p. 985.) Potter concluded that the defendant tire manufacturer had violated a statute governing the disposal of toxic waste and that the plaintiffs' claim was not based on only an alleged "duty to avoid negligently causing emotional distress." (Id. at p. 984.) Because the defendant had breached a duty imposed by statute, Potter did not address in what circumstances a defendant could "assume[] a duty to plaintiff in which the emotional condition of the plaintiff is an object" (id. at p. 985).

h. Reconciling the Supreme Court Opinions

The California Supreme Court opinions discussed ante other than Christensen, supra, 54 Cal.3d 868, and Potter, supra, 6 Cal.4th 965, all involved negligence by health care providers and indicate that in a negligence action against a health care provider, a plaintiff qualifies as a "direct victim" to whom the defendant owes a duty of care only if the plaintiff was a patient of the defendant or the defendant's injury-producing conduct was directed at the plaintiff. (Huggins, supra, 6 Cal.4th at pp. 130-131; Burgess, supra, 2 Cal.4th at p. 1075; Marlene F., supra, 48 Cal.3d at p. 590; Ochoa, supra, 39 Cal.3d at pp. 172-173; Molien, supra, 27 Cal.3d at p. 923.)[14]Christensen, in *885 contrast, did not involve a health care provider. The holding in Christensen was not based on the court's consideration of the nature of the relationship between the plaintiffs and a health care provider, and concerns regarding the effect of the imposition of a duty of care on the provision of health care services (see Huggins, supra, 6 Cal.4th at p. 133) played no role in the decision. Rather, the holding in Christensen was based on the court's consideration of the nature of the relationship between the plaintiffs and the defendants that were involved in the handling of the decedents' remains.[15]
(5) Christensen held that in light of the nature of the services provided by the mortuary and crematory defendants, those defendants assumed a duty to all close family members for whose benefit the services were performed to perform those services in a respectful and dignified manner so as not to cause emotional distress. (Christensen, supra, 54 Cal.3d at pp. 890-891.) The rule that we glean from Christensen with respect to a purchaser of human body parts, in contrast, is that such a purchaser who induces the seller to act in a way that results in a foreseeable emotional injury to the plaintiffs owes the plaintiffs a duty of care if consideration of the other Rowland factors supports the existence of a duty.[16] (Id. at pp. 891-892.)

3. Plaintiffs Adequately Allege a Duty of Care

The trial court stated at the hearing on the second round of demurrers in the Cohen action that the complaint failed to allege facts sufficient to state a negligence cause of action against NuVasive because plaintiffs did not allege that NuVasive knew that UCLA was breaching its duties owed to the decedents' family members, and therefore did not allege that NuVasive *886 knowingly induced UCLA to violate its duties owed to the family members. The court stated that the complaint alleged that Johnson & Johnson and Depuy Mitek, in contrast, knowingly induced UCLA to breach its duties to the family members. The court stated that Christensen, supra, 54 Cal.3d 868, stood for the proposition that a defendant can be liable for inducing another to act in circumstances in which it is foreseeable that the conduct will cause injury to another person. Yet the court concluded that plaintiffs must allege that defendants intended to cause UCLA to breach its duties owed to plaintiffs in order to state a cause of action.
A later order overruling the demurrer by Johnson & Johnson and Depuy Mitek explained the trial court's view that the rule from Christensen, supra, 54 Cal.3d 868, with respect to the liability of a purchaser of human body parts for inducing another person to cause a foreseeable injury was limited to circumstances where that person had a statutory duty to obtain the consent of the statutory right holder before removing body parts. The court stated that the holding in Christensen was based on an "application of the doctrine of negligence per se." The court concluded that UCLA owed a duty to plaintiffs based on its alleged representations as to the limited use of the human remains, but that UCLA had no statutory duty to those with the statutory right to dispose of the remains because that right had been conveyed to UCLA in connection with the donations. The court therefore concluded that Johnson & Johnson and Depuy Mitek could not be liable based on the holding in Christensen. The court stated, however, that the allegations that those defendants intended to induce conduct harmful to plaintiffs made their conduct more blameworthy than that of a defendant who was merely negligent, and that those defendants therefore could be liable for knowingly inducing UCLA to breach its duty owed to plaintiffs.
(6) Christensen held that Carolina as a purchaser of human body parts could be liable for negligently inducing the seller to breach its duty owed to the plaintiffs in a way that resulted in a foreseeable emotional injury to the plaintiffs. (Christensen, supra, 54 Cal.3d at pp. 891-892.) "Negligence in procuring injury-producing conduct of another may subject the negligent actor to liability for that conduct.... Where a defendant has induced another to act in circumstances under which it is foreseeable that the conduct will cause injury to a third party, liability is found." (Id. at p. 892.) Thus, a purchaser of human body parts can be liable for inducing the seller to act in a manner that results in a foreseeable emotional injury to the decedent's family members without regard to whether the purchaser (1) actually knew that the seller would breach a duty owed to the family members or (2) intended to cause such a breach of duty.
In our view, the holding in Christensen, supra, 54 Cal.3d 868, did not depend on the existence of a statutory duty on the part of the crematory *887 defendants. Rather, Christensen referred to liability based on "procuring injury-producing conduct of another" in circumstances where the injury is foreseeable. (Id. at p. 892.) The fact that the crematory defendants in Christensen owed a statutory duty of care to the plaintiffs not to dispose of the remains without their prior consent does not compel the conclusion that liability is limited to only those circumstances. Moreover, to the extent that liability may be limited to circumstances where the purchaser of human body parts induced another person to breach that person's duty (whether statutory or common law) owed to the decedent's family members,[17] plaintiffs here allege that UCLA owed them a duty based on its prior representations and that NuVasive induced UCLA to breach that duty. We can discern no good reason to limit a defendant's duty of care based on inducing another person to breach its duty owed to the plaintiff only to circumstances where that person's duty is based on a statute.
Christensen, supra, 54 Cal.3d 868, differs from this case in that the plaintiffs in Christensen reasonably expected their loved ones to receive a dignified burial or cremation without dissection or dismemberment for any purpose. Here, in contrast, the donors and their families understood that the bodies would be dissected or dismembered for purposes of medical research and education. We believe, however, that the same concerns of respect for human remains and for the consolation of surviving family members support a duty of care in these circumstances where defendants allegedly made assurances that the bodies would be used only by "medical faculty, students, staff, or students in health-related professions" and that bodies or body parts could not legally be sold. Just as the funeral-related services in Christensen were provided primarily for the benefit of bereaved family members, the alleged representations concerning the restricted uses of the remains provided some comfort to bereaved family members concerned about the disposition of their decedents' remains. Although NuVasive, like Carolina in Christensen, "did not assume any duty related to the delivery of funeral-related services" (id. at p. 891), NuVasive allegedly induced UCLA to sell body parts in circumstances in which it was foreseeable that emotional injury would result (see id. at p. 892).
Consideration of the Rowland factors supports the existence of a duty of care in these circumstances. Plaintiffs' emotional injury caused by the alleged improper sale and mistreatment of the remains of their close relatives was clearly foreseeable, regardless of whether plaintiffs observed the alleged misconduct. (Christensen, supra, 54 Cal.3d at pp. 894-896.) We have no reason to doubt either the fact of emotional injury or the close connection between the alleged misconduct and the harm suffered. (Ibid.) The moral blame of a purchaser of human remains who knew or reasonably should have *888 known that the remains were not intended for sale or for the uses to which the purchaser put the remains, and who purchased the remains through a middleman in order to avoid detection, is high. (Id. at pp. 896-898.) The imposition of a duty of care would discourage similar misconduct in the future and therefore would further the policy of preventing further harm. The burden on a purchaser of human remains to ensure that its purchase and use of remains does not violate any restrictions intended for the benefit of the decedents' family members would not be so great a burden as to suggest that the imposition of a duty of care would be inappropriate. Moreover, there is no indication that the imposition of a duty would significantly impair the ability of such a purchaser to obtain remains for medical research or that the community would suffer as a result. Finally, although insurance may not be available to protect a purchaser from liability to the extent that its misconduct was intentional, the cost of avoiding similar misconduct in the future is minimal. (Id. at p. 898.)
NuVasive contends the exclusive bases for a duty of care in a "direct victim" case are "(1) assumption of a duty; (2) a special relationship; or (3) a duty imposed by statute." NuVasive argues that Spates v. Dameron Hospital Assn. (2003) 114 Cal.App.4th 208 [7 Cal.Rptr.3d 597] (Spates) supports this proposition. We disagree.[18]Spates involved a woman who died while a patient at a hospital. The hospital staff was unable to contact the decedent's daughter to notify her of the death and turned the remains over to the coroner for cremation. The daughter sued the operator of the hospital, seeking damages for emotional distress caused by the alleged negligent disposal of the decedent's remains. (Id. at pp. 211-212.) Spates rejected the argument that a duty of care in a "direct victim" case must be based on a preexisting relationship between the parties. (Id. at pp. 213-214.) Spates stated that, to the contrary, "a direct victim claim may be premised on a duty that is (1) assumed by the defendant, (2) imposed as a matter of law, or (3) arises out of a relationship between the parties." (Id. at p. 214, citing Marlene F., supra, 48 Cal.3d at p. 590.)
Spates stated that dictum in Aguirre-Alvarez v. Regents of University of California (1998) 67 Cal.App.4th 1058 [79 Cal.Rptr.2d 580] "suggested that a direct victim claim may be premised on a duty imposed by statute." (Spates, supra, 114 Cal.App.4th at p. 215.) Spates rejected the plaintiff's argument that the defendant owed her a duty under Health and Safety Code section 7104, concluding that the plaintiff was not within the class of persons for *889 whose benefit the statute was enacted. (Spates, supra, at pp. 217-220.) Spates did not consider any potential basis for a duty apart from the statute and neither held nor suggested that the only basis for a duty "imposed as a matter of law" is a statutory duty. Moreover, Spates did not discuss the holding in Christensen, supra, 54 Cal.3d 868, with respect to the liability of a purchaser of body parts and in no way suggested that the holding in Christensen on that point should be narrowly construed.
Melican v. Regents of University of California (2007) 151 Cal.App.4th 168 [59 Cal.Rptr.3d 672] also is not on point. Melican involved the Willed Body Program operated by the University of California at Irvine (UCI). The plaintiffs alleged that the cremated remains returned to them were commingled with the remains of others. (Id. at p. 172.) Melican distinguished the role of a mortuary from that of a research institution using cadavers for research purposes, and concluded that by agreeing to return the cremated remains to the plaintiffs, UCI did not assume the duties of a mortuary. (Id. at p. 179.) Melican held that UCI had no duty to ensure that the returned remains were not commingled with the remains of others. (Id. at p. 180.) The court noted that the Legislature had exempted public institutions, hospitals, and medical schools from the Funeral Directors and Embalmers Law (Bus. & Prof. Code, § 7609) and that the donation agreement did not foreclose the possibility that the remains would be commingled. (Melican, supra, at pp. 179, 181.) Thus, Melican concluded that the alleged conduct was not wrongful. Unlike the situation here, there was no allegation in Melican that UCI acted contrary to its representations made to the donors or their families or that any other party induced such wrongful conduct.
We conclude that the facts alleged in the complaint are sufficient to establish that NuVasive owed plaintiffs a duty not to induce UCLA to act in a manner that would cause a foreseeable emotional injury to plaintiffs. The sustaining of the demurrer to the negligence counts in plaintiffs' complaints in the two actions was error.

4. Plaintiffs Have Shown No Error in the Sustaining of the Demurrer to the Counts for Fraud and Intentional Infliction of Emotional Distress

Plaintiffs do not separately address the fraud counts and therefore abandon any claim of error as to those counts. (Tiernan v. Trustees of Cal. State University & Colleges (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; Reyes v. Kosha (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].) In their brief discussion of the counts for intentional infliction of emotional distress, plaintiffs fail to cite or discuss any legal authority to support their argument. They therefore have abandoned any claim of error as to those counts as well. (Badie v. Bank of America (1998) 67 Cal.App.4th 779, 784-785 [79 Cal.Rptr.2d 273].)

*890 DISPOSITION

The judgments in both No. B194078 and No. B196905 are reversed with directions to vacate the ruling on the demurrer in each action and enter an order in each action overruling the demurrer to the negligence count against NuVasive and sustaining the demurrer without leave to amend to the other counts against NuVasive. Each party is to bear its own costs on appeal.
Kitching, J., and Aldrich, J., concurred.
NOTES
[1] Plaintiffs also contend NuVasive can be liable for negligence as a coconspirator with UCLA. Because we conclude that the negligence counts are sufficient on other grounds, we need not address conspiracy as a basis for negligence liability.
[2] With respect to Johnson & Johnson and Depuy Mitek, the complaint alleges not only that those defendants knew or reasonably should have known that the donated remains were not intended for sale or for the uses to which they put the remains, but that they actually knew that the sale of body parts donated to the Willed Body Program was contrary to promises made by UCLA to donors and their families and that they exercised joint control over the middleman, together with UCLA.
[3] The court overruled the demurrer by Johnson & Johnson and Depuy Mitek to the negligence count and sustained without leave to amend their demurrer to the counts for fraud and intentional infliction of emotional distress. The court overruled the demurrer by Regents of the University of California to all counts based on governmental immunity and its demurrer to the count for intentional infliction of emotional distress, and sustained without leave to amend its demurrer to the fraud counts.
[4] Hereafter, our reference to "plaintiffs" is intended to include both the Cohen and Szymanski plaintiffs.
[5] We conclude that plaintiffs have abandoned this contention by failing to cite or discuss any legal authority in support of their argument, as stated post.
[6] These are commonly known as the Rowland factors.
[7] Thing, supra, 48 Cal.3d 644, involved a child who was injured when he was struck by an automobile. The plaintiff was his mother who suffered an emotional injury as a result. (Id. at p. 647.) Thing stated, "it is clear that foreseeability of the injury alone is not a useful `guideline' or a meaningful restriction on the scope of the NIED [negligent infliction of emotional distress] action." (Id. at p. 663.) Characterizing the results in "bystander" cases as "arbitrary" and "inconsistent" (id. at p. 662), the Thing court resolved to increase the certainty in the law and impose a more acceptable limit on a defendant's liability. (Id. at pp. 647, 658.) Thing concluded that a plaintiff may recover damages for emotional distress caused by observing an injury negligently inflicted on another person "only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." (Id. at p. 647.)
[8] Dillon recommended as "guidelines" the considerations that Thing, supra, 48 Cal.3d 644, later adopted as strict limits on the recovery of emotional distress damages in a "bystander" case. (Dillon, supra, 68 Cal.2d at pp. 740-741.)
[9] Plaintiffs do not contend NuVasive owed them a duty as bystanders.
[10] Thing, supra, 48 Cal.3d at pages 660 and 668, disapproved dictum in Ochoa, supra, 39 Cal.3d 159, that had suggested that the guidelines from Dillon, supra, 68 Cal.2d 728, were not essential in determining the duty of care in a "bystander" case.
[11] Christensen stated: "The unique context in which this dispute arises is relevant to its resolution. The model complaint alleges that the mortuary and crematory defendants undertook not simply to provide an expeditious disposal of the remains of plaintiffs' decedents as a means by which the holders of the statutory rights or the contracting party could fulfill an obligation imposed by the state. Rather, the mortuary defendants undertook to provide appropriate and dignified services of the type that bereaved family members normally anticipate. Those services are not limited to the conduct of, or facilitating the conduct of, ceremonial or funeral rites, but extend through arranging the commitment of the remains through burial or encryptment, or alternatively cremation and inurnment or other disposition of the ashes of the decedent for whose family the services were performed. [Citation.]" (Christensen, supra, 54 Cal.3d at p. 886, fn. omitted.) Christensen stated further: "funeral-related services are principally for the comfort of the living, having as their aim the consolation of the leading mourners. The expectations of the survivors, and `essence of the contract [is] a reasonable expectation of dignity, tranquility, and personal consolation.' [Citation.]" (Id. at p. 887, fn. 17.)
[12] The "statutory right" refers to the right to control the disposition of human remains under Health and Safety Code section 7100. (Christensen, supra, 54 Cal.3d at p. 876, fn. 4.) The Court of Appeal in Christensen concluded that the mortuary defendants had a special relationship with and owed a duty of care to all close family members of the decedents. (Id. at pp. 882-883.) The Court of Appeal concluded, however, that Carolina had no special relationship with the plaintiffs and therefore limited any recovery against Carolina to the statutory right holders. The plaintiffs did not challenge that part of the decision. (Id. at p. 883, fn. 13.) Thus, the only remaining claims against Carolina for purposes of the Supreme Court opinion were those of the statutory right holders.
[13] Potter cited Burgess, supra, 2 Cal.4th at page 1073, Christensen, supra, 54 Cal.3d at pages 890-891, Marlene F., supra, 48 Cal.3d at page 590, and Anderson v. Northrop Corp. (1988) 203 Cal.App.3d 772, 776 [250 Cal.Rptr. 189] in support of this statement. (Potter, supra, 6 Cal.4th at pp. 984-985.)
[14] Martin By and Through Martin v. U.S. (9th Cir. 1993) 984 F.2d 1033 derived a broader rule from these opinions and from Christensen, supra, 54 Cal.3d 868. Martin stated that in each of these cases, "the defendant's negligent conduct was directed at the plaintiff as well as the injured party." (Martin, supra, at p. 1036.) Martin stated further that these opinions "requir[ed] a relationship between the plaintiff and defendant which gives rise to a duty to avoid the tort causing injury." (Id. at p. 1037.) Martin discussed the holding in Christensen with respect to the mortuary defendants, who had a special relationship with close family members for whose benefit the funeral services were provided and therefore assumed a duty to close family members. (Martin, supra, at p. 1036.) Martin, however, did not discuss the holding in Christensen with respect to Carolina, which had no prior relationship with the plaintiffs, and did not attempt to explain how that holding could be explained by the purported general rule. The defendant in Martin was neither a health care provider nor a purchaser of human remains, but the federal government as operator of a children's daycare facility. We express no opinion as to such circumstances, other than an action against a health care provider, where the rule limiting recovery to a patient of the defendant or a person at whom the defendant's injury-producing conduct was directed might apply.
[15] The Restatement Third of Torts: Liability for Physical and Emotional Harm (Tent. Draft No. 5, Apr. 5, 2007) section 46 states that negligent conduct that causes serious emotional disturbance to another but does not create a risk of bodily harm subjects the actor to liability only if the conduct "occurs in the course of specified categories of activities, undertakings, or relationships in which negligent conduct is especially likely to cause serious emotional disturbance." (Id., subd. (b).) The comments state that courts appropriately determine liability based on the nature of the activity, undertaking, or relationship and that foreseeability alone is not an appropriate standard to limit liability for emotional harm. (Id., coms. d & f, pp. 60, 61.) "Instead of relying on foreseeability to identify appropriate cases for recovery, the policy issues surrounding specific categories of undertakings, activities, and relationships must be examined to determine whether, as a category, they merit inclusion...." (Id., com. f, p. 61.)
[16] We need not decide whether the rule from Christensen, supra, 54 Cal.3d 868, is limited to circumstances where the seller owed the plaintiffs a duty of care. Plaintiffs here adequately allege that UCLA owed them a duty of care based on its representations as to the limited use of the decedents' remains.
[17] We need not and do not decide whether liability is so limited, as we have stated.
[18] The trial court initially accepted this argument in ruling on the demurrers to the first amended master class complaint. The court later rejected the argument in overruling the demurrer by Johnson & Johnson and Depuy Mitek to the second amended master class complaint, and concluded that Christensen, supra, 54 Cal.3d 868, supported liability in circumstances other than the three enumerated categories.